IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 19-CR-20674-GAYLES

UNITED STATES OF AMERICA,

v.

BORIS ARENCIBIA., *et al*

Defendants.

## MOTION TO QUASH SUBPOENAS DUCES TECUM

Non-parties, Rene Lorenzo and Carlos Casanueva, move the Court to quash subpoenas duces tecum served on them by Defendant, Boris Arencibia.

### BACKGROUND

Boris Arencibia is one of multiple defendants charged in this criminal case relating to the alleged diversion and misbranding of pharmaceuticals. More specifically, the government charged Arencibia in the Sixth Superseding Indictment with conspiracy to deliver misbranded and adulterated drugs, in violation 18 U.S.C. § 371 (count 1); conspiracy to traffic in medical. ducts with false documentation, in violation of 18 U.S.C. § 371 (count 2); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (count 3).

On October 22, 2024, Mr. Arencibia served a subpoena on Rene Lorenzo. A copy of the subpoena is attached as exhibit "A." On October 24, 2024, two days later, he served an identical subpoena on Carlos Casanueva. The subpoena served on him is

1

attached as exhibit "B." Both subpoenas have return dates of November 18, 2024, and demand the production of records by November 4, 2024.

Neither Mr. Lorenzo nor Mr. Casanueva have any involvement in any of the allegations set forth in the indictment. Nor does the government allege that they participated in the scheme set forth in its indictment. They do not know Mr. Arencibia and know nothing about him. They are, however, related to Defendant Stephen Costa, who Mr. Arencibia believes may testify against him at trial. Mr. Lorenzo is Mr. Costa's uncle while Mr. Casanueva is Mr. Costa's cousin.

The subpoenas demand the following from Messrs. Lorenzo and Casanueva:

(1) Copies of any and all communications, i.e., text messages, whatsapp messages, and/or e-mails, between you and Stephen Manuel Costa from 2013 to the present.

(2) Copies of any and all bank statements showing any monies received from Stephen Manuel Costa from 2013 to the present.

(3) Copies of any and all Warranty Deeds, Quitclaim Deeds, Bills of Sale for any property, real or personal, that was purchased with funds received from Stephen Manuel Costa from 2013 to the present.

According to Mr. Arencibia, he subpoenaed Messrs. Lorenzo and Casanueva because they appear in two reports of interviews (ROIs) which the government produced in discovery. One ROI, according to Mr. Arencibia, describes that Defendant Carlos Gonzalez claimed that Mr. Lorenzo and Mr. Casanueva held real property for Mr. Costa. A second ROI, according to Mr. Arencibia, describes that Defendant

Mohammad Salemi claimed that Mr. Costa's relatives were "holding assets" for him, including his father, uncles, wife, and Mr. Casanueva (his cousin).

Although we do not have access to discovery in this matter, apparently the reems of financial records produced as discovery and the government's exhaustive financial investigations into Mr. Costa, who is being prosecuted for a second time for similar offenses,[1] do not show any transfers to Messrs. Lorenzo and Casanueva. And the government, whose agents interviewed Defendants, Gonzalez and Salimi, and produced the ROIs to Mr. Arencibia, has confirmed to the undersigned that is has no evidence of transfers to Mr. Lorenzo or Mr. Casanueva or that they hold or held any assets or real property for Stephen Costa.

For reasons more fully explained below, Messrs. Lorenzo and Casanueva seek an order from the Court quashing Defendant Boris Arencibia's subpoenas.

## MEMORANDUM OF LAW

Criminal trial subpoenas are government by Rule 17 (c) which provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

---

[1] *See USA v. Stephen Costa*, Case No. 15-cr-21004-CMA, ECF 10, Factual Proffer (describing fraud scheme involving the distribution of second-hand prescription drugs).

Fed. R. Civ P. 17 (c) (1). The Rule also states that "[t]he court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id.*

Rule 17 is intended to secure evidence, whose existence and contents is specifically known, for use at trial. Rule 17 "was not intended to provide an additional means of discovery. *Bowman Dairy Co. v. Unites States*, 341 U.S. 214, 220 (1951). Indeed, "the Supreme Court has explained that a subpoena for documents under Rule 17 'was not intended to provide a means of discovery for criminal cases[;] ... [rather,] its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials....' " *United States v. Brown*, 2013 WL 126405 *3 (S.D.FL. 2013) (J. Rosenbaum) (quoting *United States v. Nixon*, 418 U.S. 683, 698 (1974)); *see also*, *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984) ("[R]ule [l7(c)] was not intended to provide additional means of discovery for any party in criminal cases."); *United States v. Fowler*, 932 F.2d 306, 311 (4th Cir. 1991) ("Rule 17 (c) is a not a discovery device."); *United States v. Culbertson*, 630 F.2d 139, 146 (3rd Cir. 1980) ("Courts must be careful that Rule 17(c) is not be turned into a broad discovery device, thereby, undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16.").

In evaluating whether a subpoena under Rule 17 should be issued, the party seeking the subpoena must show the following: "(1) that the documents are evidentiary ... and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly

4

prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition." *Brown*, at *3-4 (quoting *Nixon*, at 699-700). Based on this test, the Supreme Court requires that the party seeking the production of documents must "clear three hurdles" and show (1) relevancy, (2) admissibility, and (3) specificity. *Nixon*, at 701; *see also United States v. R. Enters, Inc.*, 498 U.S. 292, 299 (1991) (noting that in *Nixon*, the Court "determined that, in order to require production of information prior to trial, a party must make a reasonably specific request for information that would be both relevant and admissible at trial"). Courts have further recognized that the specificity and relevance elements are heightened in that they "require more than the title of a document and conjecture as to its contents." *Brown*, at *4 (citing *United States v. Arditti,* 955 F.2d 331, 345 (5th Cir. 1992)).

Specificity.

"Specificity is the hurdle on which many subpoena requests stumble." *United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kan. 1994). As Judge Hoeveler stated in the prosecution of Panamanian dictator Manuel Noreiga: "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991).

In *Noriega,* Judge Hoeveler quashed government subpoenas issued to the Metropolitan Correctional Center ("MCC") for logs and tape recordings of Manuel Noriega's phone conversations because the government failed to describe the substance of any conversation to the Court. Just like Mr. Arencibia here, the government was simply hoping that it might discover something it could use. Judge Hoeveler invalidated the subpoenas for being a prohibited attempt at discovery:

> [The prosecution] simply hoped to find something of possible value which might bolster its case against Noriega. The subpoenas thus constituted a broad dragnet aimed at bringing in anything and everything contained in the recordings regardless of their identifiable or foreseeable significance to the charges at issue. This is precisely the kind of unwarranted expedition which Rule l7(c) does not permit.

*Id.* at 1493.

Here, the first of the categories of items Mr. Arencibia demands with his subpoena – *any and all* communications with Mr. Costa since 2013 – serves as an especially obvious 'broad dragnet.' The use of terms like *any and all* without any limitations whatsoever signals that Mr. Arencibia is off on a fishing expedition hoping he might catch something of use to him. There is nothing specific about a demand for every text message, watts app message, and email for well over the last ten years between Mr. Costa and Messrs. Lorenzo and Casanueva. It is the opposite of specific.

Items two and three are not much better. With item number two of his dragnet subpoena, Mr. Arencibia broadly seeks any and all bank statements showing any monies received from Mr. Costa from 2013 to the present. While he

6

effectively seeks evidence of transfers or money received from Mr. Costa, there is *no* specificity in seeking *any and all* statements showing *any* such transfers. *See United States v. Louis,* No. 2005 WL 180885, at * 5 (S.D.N.Y. 2005 (rejecting as too broad a Rule 17(c) subpoena requesting "any and all" documents relating to several categories of documents).

Similarly, with item number three, Mr. Arencibia seeks any and all Warranty Deeds, Quitclaim Deeds, Bills of Sale for any property, real or personal, that was purchased with funds received from Mr. Costa from 2013 to the present. Again, in seeking *any and all* of such documents relating to *any* property, both real and personal, that was purchased with funds from Mr. Costa, the demand lacks specificity.

With items number two and three of his subpoenas, Mr. Arencibia fails to identify anything specific about what he is looking for except all transfers from Costa and any property, personal and real, obtained with funds from such transfers. Mr. Arencibia fails to identify a single transfer or property that has any relevance to offenses with which he is charged or his defense to them. Indeed, his lack of specificity makes it difficult, if not impossible, to gauge the relevance and admissibility of the evidence he purportedly seeks. Instead, like a party relying on a discovery subpoena, he hopes that the subpoenas he served here will turn up something he thinks he can use, later figuring out whether that it may relevant and admissible. His problem, however, is that criminal trial subpoenas must specifically identify relevant and admissible evidence. *Brown*, at *3 (As the Eleventh Circuit has explained, "the rule

7

only reaches *specifically identified documents* that will be admissible as evidence at trial, provided that the application for the subpoena is made in good faith.") (citing *Silverman*, at 1386).

Further demonstrating that Mr. Arencibia is off on a fishing expedition is his use of identical subpoenas duces tecum for both Mr. Lorenzo and Mr. Casanueva. Identical subpoenas are a tell that Mr. Arencibia's demands lack specificity. *See United States v. Shah*, 2022 WL 12484550, at *2 (E.D.N.Y. 2022) ("The fact that Shah sent identical subpoenas to several defendants in two criminal matters strengthens the inference that Shah is using the subpoena in "hopes that something useful will turn up.") (quoting *United States v. Lenard*, 817 F. Supp.2d 286, 295 (E.D.N.Y. 1992)).

Relevance and Admissibility.

Mr. Arencibia does not seek evidence relevant to his defense at trial or the offenses the government lodged against him in the indictment. Rather, as we understand it, Mr. Arencibia believes that Mr. Costa will testify against him at trial, and he hopes to turn up impeachment evidence from Mr. Costa's family members since two cooperating defendants apparently made uncorroborated statements to government agents that Mr. Costa's family members were holding unspecified assets for Mr. Costa. Notwithstanding that *Nixon* has been interpreted to disallow the use of Rule 17 (c) subpoenas to seek impeachment evidence in advance of trial, *see United States v. Hughes*, 895 F. 2d. 1135, 1146 (6th Cir. 1990), under *Silverman*, in the 11th Circuit, impeachment evidence may be sought with a Rule 17 (c) subpoena, Mr. Arencibia cannot show how evidence about Mr. Costa's family member's purportedly

8

"holding assets" for him is both relevant and admissible. *Brown*, at * 3 (citing *Silverman*, at 1386) (permitting a government trial subpoena served on the defendant, a lawyer who was charged with obstructing justice by extorting a client to pay him to "fix" the criminal case against the client, for bar complaints made by former clients for taking advantage of them that could be used to impeach the lawyer when he testified).

Judge Rosenbaum's decision in *Brown* is instructive. There, the defendant, who the government charged with participating in an armored truck robbery and the shooting death of the armored truck messenger, sought a cooperating co-defendant's lawyer's investigative records relating to the cooperator's involvement in automobile thefts, robberies, and attempted robberies with the defendant. *Id.* at *3-4. His theory was that the cooperator, reviewing discovery evidence provided to him by his lawyer, had fabricated his testimony of the other attempted robberies. *Id.* In refusing to issue the subpoena, Judge Rosenbaum distinguished between the subpoena upheld in *Nixon*, where the prosecutors through sworn witness statements showed that the Nixon tape recordings contained specific and relevant conversations, and a search for purported impeachment evidence, even assuming it existed, that would not serve to impeach the cooperator's anticipated testimony about how the cooperator knew about the defendant's involvement in the armored truck robbery. *Id.* at *4.

Similarly, here, even if evidence of transfers from Mr. Costa to Messrs. Lorenzo and Casanueva exists, it is not at all clear how such evidence would be relevant and admissible. Such evidence says nothing about Mr. Costa's purportedly anticipated

9

testimony about Mr. Arencibia's involvement in the scheme charged in the indictment.

As evidence that may purportedly serve to impeach Mr. Costa's credibility, Messrs. Lorenzo and Casanueva's documents and testimony, if they were to contradict anything Mr. Costa may state at trial about whether he used his family to "hold assets" for him, would be an inadmissible attempt to impeach a witness on a collateral matter. *See United States v. Russo*, 796 F.2d 1443, 1454 (11th Cir. 1986); *United States v. Ndiaye*, 434 F.3d 1270, 1282 (11th Cir. 2006). In short, not only would such testimony and evidence lack probative value on the question of Mr. Arencibia's involvement in the pharmaceutical diversion scheme at issue in the indictment, but it would also be inadmissible.

Production in advance of trial.

Finally, Mr. Arencibia seeks production in advance of trial on November 4, 2024. Mr. Arencibia has not made any showing that he needs the production of the documents he seeks in advance of trial. *Why* he wants the documents which he subpoenaed in advance of the trial is nevertheless obvious. He wants to ascertain whether any of the "any and all' documents or records he seeks turn out to be useful, relevant, and admissible. That is precisely what the Supreme Court has said Rule 17 does not permit.

## CONCLUSION

In sum, Mr. Arencibia is on a fishing expedition for evidence that he fails to specifically identify and is irrelevant and inadmissible. The Court should, therefore, quash the subpoenas.

<u>Meet-and confer.</u>

The undersigned has conferred with counsel to Mr. Arencibia, Frank Quintero. We disagree about subpoenas.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 6, 2024, a true and correct copy of the foregoing has been filed and served upon all counsel of record.

Respectfully submitted,

*s/ Henry P. Bell*
Henry P. Bell
Fla. Bar. No. 090689
**Bell Rosquete Reyes Esteban, PLLC**
999 Ponce De Leon Blvd,
Suite 820
Coral Gables, FL  33134
305-570-1610
Fax : 305-570-1599
Email: hbell@brresq.com