UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NUMBER: 19-CR-20674-GAYLES

**UNITED STATES OF AMERICA**

*Plaintiff,*

**v.**

**BORIS ARENCIBIA,**

*Defendant.*
_____/

## MOTION TO QUASH SUBPOENA DUCES TECUM

Non-party, ANNIE GONZALEZ, by and through undersigned counsel, hereby moves to quash subpoena duces tecum served on her by Defendant, Boris Arencibia.

**Brief Factual and Procedural History:**

Boris Arencibia is one of Twenty (20) named defendants charged in this criminal case relating to the alleged diversion and misbranding of pharmaceuticals. On May 8th, 2024, the government charged Arencibia in the Sixth Superseding Indictment with conspiracy to deliver misbranded and adulterated drugs, in violation 18 U.S.C. § 371 (count 1); conspiracy to traffic in medical ducts with false documentation, in violation of 18 U.S.C. § 371 (count 2); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (count 3).

On October 22, 2024, Mr. Arencibia served a subpoena on Dr. Annie Gonzalez (the wife of Defendant, Stephen Costa in this matter, 1:19-cr-20674-DPG-10). A copy of the subpoena is attached as Exhibit "A." On the same date, Mr. Arencibia served a subpoena on Mr. Rene Lorenzo and then two days later on October 24, 2024, he served an identical subpoena on Mr. Carlos Casanueva. Copies of those subpoenas are attached hereto as Exhibit "B." All subpoenas have return dates of November 18, 2024, and demand the production of records by November 4, 2024.

_____
**PRIETO LAW FIRM**
55 Merrick Way, Suite 212, Coral Gables, FL 33134
Office (305) 577-3440 - Fax (786) 971-5658

Dr. Annie Gonzalez has absolutely no involvement in any of the allegations as set forth in the many indictments filed in this matter. The government has never alleged that Dr. Gonzalez has participated in the scheme set forth in its indictment. Ms. Gonzalez does not know Mr. Arencibia and knows nothing about him. As indicated above, Ms. Gonzalez is the wife of Defendant Stephen Costa, who Mr. Arencibia believes may testify against him at trial.

The subpoena demands the following (in addition to trial testimony)[1] from Dr. Annie Gonzalez:

> ☒  YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):
>
> 1. Copies of any and all bank statements on any joint accounts, personal and/or business with Stephen Manuel Costa from 2013 to the present.
>
> 2. Copies of any and all bank statements on any account where you have signature authority and received any funds from Stephen Manuel Costa from 2019 to the present.
>
> 3. Copies of any and all Warranty Deeds, Quitclaim Deeds, Bills of Sale for any property, real or personal, that was purchased or transferred with funds received from Stephen Manuel Costa from 2013 to the present.
>
> Please provide copies of the above documents to the undersigned no later than Monday, November 4th, 2024. This will expedite your trial testimony.

According to Mr. Arencibia, he subpoenaed Ms. Gonzalez because he received a report of interview (ROI) which the government produced in discovery that claims Mr. Costa used family members to hold real property in their names ("straw owners.") One ROI, according to Arencibia, describes that Defendant Mohammad Salemi claimed that Mr. Costa's relatives were "holding assets" for him, including his father, uncles, wife, and Mr. Casanueva (his cousin).

Undersigned and Dr. Annie Gonzalez have not accessed any discovery in this matter but would imagine that the government conducted exhaustive financial investigations into Defendant Stephen Costa, who is being prosecuted for a second time for similar offenses. Clearly any such

---

[1] Dr. Annie Gonzalez cannot be compelled to testify because of the spousal privilege against adverse testimony as further argued below.

_____
PRIETO LAW FIRM
55 Merrick Way, Suite 212, Coral Gables, FL 33134
Office (305) 577-3440 - Fax (786) 971-5658

investigation would have involved agents scouring through his wife's (Dr. Annie Gonzalez) financial records and history. Again, Dr. Annie Gonzalez has never been connected to any conduct alleged in the operative Indictment or any other of the Indictments. Dr. Annie Gonzalez is a respected Dermatologist and has never mixed financial accounts with her husband. The marital property located at 7441 SW 125th Avenue, Miami, FL 33183 currently has a *Lis Pendens* filed in the official records of Miami-Dade County by the United States. *See, Lis Pendens* attached hereto as Exhibit "C." Additionally, as Ms. Gonzalez's husband, Mr. Costa would have an equal interest in any of her property; as such, the requested documents have no value to Mr. Arencibia. Public records that contain information concerning ownership of any real property are readily available to the Defendant and Dr. Gonzalez should not be compelled to produce documents dating back to 2013. The requested documents are irrelevant, unreasonable, and oppressive; furthermore, her testimony may be privileged as she is married to Defendant Costa and the subpoena is nothing more than a fishing expedition.

Dr. Annie Gonzalez seeks an order from the Court quashing Defendant Boris Arencibia's subpoena.

## MEMORANDUM OF LAW

Criminal trial subpoenas are government by Rule 17 (c) which provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

*Fed. R. Civ P. 17 (c) (1)*(2024). The Rule also states that "[t]he court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id.* Rule 17 is intended to secure evidence, whose existence and contents is specifically known, for use at

trial. Rule 17 "was not intended to provide an additional means of discovery. *Bowman Dairy Co. v. Unites States*, 341 U.S. 214, 220 (1951). Indeed, "the Supreme Court has explained that a subpoena for documents under Rule 17 'was not intended to provide a means of discovery for criminal cases[;] ... [rather,] its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials....'" *United States v. Brown*, 2013 WL 126405 *3 (S.D.FL. 2013) (J. Rosenbaum) (quoting *United States v. Nixon*, 418 U.S. 683, 698 (1974)); *see also*, *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984) ("[R]ule [l7(c)] was not intended to provide additional means of discovery for any party in criminal cases."); *United States v. Fowler*, 932 F.2d 306, 311 (4th Cir. 1991) ("Rule 17 (c) is a not a discovery device."); *United States v. Culbertson*, 630 F.2d 139, 146 (3rd Cir. 1980) ("Courts must be careful that Rule 17(c) is not be turned into a broad discovery device, thereby, undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16.").

"Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *Nixon*, 418 U.S. at 702, 94 S.Ct. 3090. "[N]o citizen, not even the President, is categorically above the common duty to produce evidence when called upon in a criminal proceeding." *Trump v. Vance*, ––– U.S. –––, 140 S. Ct. 2412, 2431, 207 L.Ed.2d 907 (2020). As such, courts generally balance the competing interests and determine on a case-by-case basis whether a subpoena issued under Rule 17(c) should be quashed.

In evaluating whether a subpoena under Rule 17 should be issued, the party seeking the subpoena must show the following: "(1) that the documents are evidentiary ... and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the

trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition." *Brown*, at *3-4 (quoting *Nixon*, at 699-700). Based on this test, the Supreme Court requires that the party seeking the production of documents must "clear three hurdles" and show (1) relevancy, (2) admissibility, and (3) specificity. *Nixon*, at 701; *see also United States v. R. Enters, Inc.*, 498 U.S. 292, 299 (1991) (noting that in *Nixon*, the Court "determined that, in order to require production of information prior to trial, a party must make a reasonably specific request for information that would be both relevant and admissible at trial"). Courts have further recognized that the specificity and relevance elements are heightened in that they "require more than the title of a document and conjecture as to its contents." *Brown*, at *4 (citing *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992)).

**<u>Specificity:</u>**

"Specificity is the hurdle on which many subpoena requests stumble." *United States v. Jackson*, 155 F.R.D. 664,667 (D. Kan. 1994). As Judge Hoeveler stated in the prosecution of Panamanian dictator Manuel Noriega: "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991).

In *Noriega,* Judge Hoeveler quashed government subpoenas issued to the Metropolitan Correctional Center ("MCC") for logs and tape recordings of Manuel Noriega's phone conversations because the government failed to describe the substance of any conversation to the Court. Just like Mr. Arencibia here, the government was simply hoping that it might discover something it could use. Judge Hoeveler invalidated the subpoenas for being a prohibited attempt at discovery:

> [The prosecution] simply hoped to find something of possible value which might bolster its case against Noriega. The subpoenas thus constituted a broad dragnet aimed at bringing in anything and everything contained in the recordings regardless of their identifiable or foreseeable significance to the charges at issue. This is precisely the kind of unwarranted expedition which Rule l7(c) does not permit.

*Id.* at 1493.

Here, Mr. Arencibia demands with his subpoena – "Copies of all bank statements on any joint accounts, personal and/or business with Stephen Manuel Costa from 2013 to the present." Certainly, the United States would have served investigative subpoenas on all of Defendant Stephen Costa's accounts if they existed and were accounts associated with his wife, Dr. Annie Gonzalez. Mr. Arencibia is off on a fishing expedition hoping he might catch something of use to him.

Items one and two are similar in that these matters would have been investigated by the United States. Furthermore, with items number two of his overbroad subpoena, Mr. Arencibia broadly seeks *any and all* bank statements showing any monies received from Mr. Costa from 2019 to the present. While he effectively seeks evidence of transfers or money received from Mr. Costa, there is *no* specificity in seeking *any and all* statements showing *any* such transfers. *See United States v. Louis*, No. 2005 WL 180885, at * 5 (S.D.N.Y. 2005 (rejecting as too broad a Rule 17(c) subpoena requesting "any and all" documents relating to several categories of documents).

Similarly, with item number three, Mr. Arencibia seeks any and all Warranty Deeds, Quitclaim Deeds, Bills of Sale for any property, real or personal, that was purchased with funds received from Mr. Costa from 2013 to the present. Again, in seeking *any and all* of such documents relating to *any* property, both real and personal, that was purchased with funds from Mr. Costa, the demand lacks specificity.

With items number two and three of his subpoenas, Mr. Arencibia fails to identify anything specific about what he is looking for except all transfers from Costa and any property, personal and real, obtained with funds from such transfers. Mr. Arencibia fails to identify a single transfer or property that has any relevance to offenses with which he is charged or his defense to them. Indeed, his lack of specificity makes it difficult, if not impossible, to gauge the relevance and admissibility of the evidence he purportedly seeks. Instead, like a party relying on a discovery subpoena, he hopes that the subpoenas he served here will turn up something he thinks he can use, later figuring out whether that it may relevant and admissible. His problem, however, is that criminal trial subpoenas must specifically identify relevant and admissible evidence. *Brown*, at *3 (As the Eleventh Circuit has explained, "the rule only reaches *specifically identified documents* that will be admissible as evidence at trial, provided that the application for the subpoena is made in good faith.") (citing *Silverman*, at 1386).

Further demonstrating that Mr. Arencibia is off on a fishing expedition is his use of identical subpoenas duces tecum for both Mr. Lorenzo and Mr. Casanueva. Identical subpoenas are a tell that Mr. Arencibia's demands lack specificity. *See United States v. Shah*, 2022 WL 12484550, at *2 (E.D.N.Y. 2022) ("The fact that Shah sent identical subpoenas to several defendants in two criminal matters strengthens the inference that Shah is using the subpoena in "hopes that something useful will turn up.") (*quoting, United States v. Lenard*, 817 F. Supp.2d 286, 295 (E.D.N.Y. 1992)).

**<u>Relevance and Admissibility:</u>**

Mr. Arencibia does not seek evidence relevant to his defense at trial or the offenses the government lodged against him in the indictment. It appears from the subpoenas and strategic serving of the subpoenas that Mr. Arencibia believes that Mr. Costa will testify against him at trial. Arencibia hopes to turn up impeachment evidence from Mr. Costa's family members simply

because one cooperating defendant apparently made uncorroborated statements to government agents that Mr. Costa's "family members" were holding unspecified assets for Mr. Costa. Notwithstanding that *Nixon* has been interpreted to disallow the use of Rule 17 (c) subpoenas to seek impeachment evidence in advance of trial, *see United States v. Hughes, 895 F. 2d. 1135, 1146 (6th Cir. 1990),* under *Silverman*, in the 11th Circuit, impeachment evidence may be sought with a Rule 17 (c) subpoena, Mr. Arencibia cannot show how evidence about Mr. Costa's wife purportedly "holding assets" for him is both relevant and admissible. *Brown*, *supra*, at * 3 (*citing Silverman*, at 1386) (permitting a government trial subpoena served on the defendant, a lawyer who was charged with obstructing justice by extorting a client to pay him to "fix" the criminal case against the client, for bar complaints made by former clients for taking advantage of them that could be used to impeach the lawyer when he testified).

Counsel for Mr. Casanueva and Mr. Lorenzo correctly points out that Judge Rosenbaum's decision in *Brown* is instructive. In that case, the defendant, who the government charged with participating in an armored truck robbery and the shooting death of the armored truck messenger, sought a cooperating co-defendant's lawyer's investigative records relating to the cooperator's involvement in automobile thefts, robberies, and attempted robberies with the defendant. *Id.* at * 3-4. His theory was that the cooperator, reviewing discovery evidence provided to him by his lawyer, had fabricated his testimony of the other attempted robberies. *Id.* In refusing to issue the subpoena, Judge Rosenbaum distinguished between the subpoena upheld in *Nixon*. In *Nixon*, prosecutors through sworn witness statements showed that the Nixon tape recordings contained specific and relevant conversations. A search for that purported impeachment evidence (even assuming it existed, would not serve to impeach the cooperator's anticipated testimony about how the cooperator knew about the defendant's involvement in the armored truck robbery. *Id.* at *4.

Similarly, here, even if evidence of transfers from Mr. Costa to his wife exists, it is not at all clear how such evidence would be relevant and admissible. Such evidence says nothing about Mr. Costa's purportedly anticipated testimony about Mr. Arencibia's involvement in the scheme charged in the Indictment. If Arencibia attempts to attack Mr. Costa's credibility, his wife's documents and testimony, if they were to contradict anything (or somehow were not privileged) would be an inadmissible attempt to impeach a witness on a collateral matter. *See United States v. Russo*, 796 F.2d 1443, 1454 (11th Cir. 1986); *United States v. Ndiaye*, 434 F.3d 1270, 1282 (11th Cir. 2006). In short, not only would such testimony and evidence lack probative value on the question of Mr. Arencibia's involvement in the pharmaceutical diversion scheme at issue in the indictment, but it would also be inadmissible.

**Production in advance of trial:**

Finally, Mr. Arencibia seeks production in advance of trial on November 4, 2024. Mr. Arencibia has not made any showing that he needs the production of the documents he seeks in advance of trial. *Why* he wants the documents which he subpoenaed in advance of the trial is nevertheless obvious. He wants to ascertain whether any of the "any and all' documents or records he seeks turn out to be useful, relevant, and admissible. That is precisely what the Supreme Court has said Rule 17 does not permit.

**Privilege:**

Rule 501 of the Federal Rules of Evidence provides in relevant part that "[e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Federal common law recognizes two distinct forms of marital privilege: (1) the privilege against adverse spousal testimony which

invests in the testifying witness the privilege of not being compelled to testify against one's spouse (*Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)); and (2) the confidential marital communications privilege which may be asserted by either spouse to bar the testimony of the other regarding marital communications made in confidence (see, e.g., *Wolfle v. United States*, 291 U.S. 7, 14, 54 S.Ct. 279, 280, 78 L.Ed. 617 (1934) ("The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marital relationship as to outweigh the disadvantage to the administration of justice which the privilege entails.")). *United States v. Premises Known as 281 Syosset Woodbury Rd.*, 862 F. Supp. 847, 851 (E.D.N.Y. 1994), aff'd sub nom. *United States v. Premises Known as 281 Syosset Woodbury Rd., Woodbury, N.Y.*, 71 F.3d 1067 (2d Cir. 1995). Here, Arencibia is not only seeking documentation, but also seeking Dr. Annie Gonzalez to presumably provide testimony to impeach Mr. Stephen Costa's testimony (adverse testimony) using his wife as a witness. This is not permitted and the subpoena commanding her to appear to testify should be quashed.

## CONCLUSION

In sum, Mr. Arencibia is on a fishing expedition for evidence that he fails to specifically identify and is irrelevant, inadmissible, oppressive, and otherwise prohibited under the Rule 17. The Court should quash the subpoena. Undersigned counsel has conferred with counsel for Mr. Arencibia, Frank Quintero, who opposes the relief requested.

Respectfully submitted,

*/s/Frank A. Prieto*
FRANK A. PRIETO, ESQ.
Florida Bar No.: 514071

---
**PRIETO LAW FIRM**
55 Merrick Way, Suite 212, Coral Gables, FL 33134
Office (305) 577-3440 - Fax (786) 971-5658

## CERTIFICATE OF SERVICE

**I HEREBY** certify that on this **12th day of November 2024,** I electronically filed the foregoing document with Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission Notices of Electronic Filing generated by CM/ECF.

**PRIETO LAW FIRM**
55 Merrick Way, Suite 212
Coral Gables, FL 33134
Phone: (305) 577-3440
Fax:    (786) 971-5658
frank@frankprietolaw.com

*/s/Frank A. Prieto*
FRANK A. PRIETO, ESQ.
Florida Bar No.: 514071