UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-20674-DPG

UNITED STATES OF AMERICA,

     Plaintiff,

v.

BORIS ARENCIBIA,

     Defendant.

_____/

## DEFENDANT BORIS ARENCIBIA'S RESPONSE TO NON-PARTY WITNESS ANNIE GONZALEZ' MOTION TO QUASH SUBPOENA DUCES TECUM FILED NOVEMBER 12TH 2024 [DE 1033].

Defendant, BORIS ARENCIBIA ("Mr. Arencibia"), through undersigned counsel, files his response to non-party, Annie Gonzalez' motion to quash subpoena duces tecum filed on November 12th, 2024. [DE 1033]. In support thereof, Mr. Arencibia states:

### I.   RELEVANT PROCEDURAL HISTORY & TIMELINE OF CHARGED CONSPIRACIES

A Grand Jury indicted Mr. Arencibia on December 20, 2023, in a Fifth Superseding Indictment in this case that was originally filed in 2019. [DE 865]. The Fifth Superseding Indictment charged three (3) conspiracies, all occurring "from around January 2013, and continuing until on or about May 28th, 2019. *Id*. Mr. Arencibia was arrested on or about January 26th, 2024, and held on a joint stipulation of temporary pre-trial detention until a formal bond hearing could be conducted. [DE 876].

On or about February 7th, 2024, Mr. Arencibia was arraigned, and a formal bond hearing was held before the Honorable Magistrate Judge Lauren Fleischer Louis. Magistrate Louis ordered Mr. Arencibia detained based on a finding that he was a risk of flight. [DE 881].



1

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

On or about February 13th, 2024, the Court granted an agreed motion to continue the trial of Mr. Arencibia and codefendant Stephen Costa from February 20th, 2024, to October 7th, 2024. [DE 885].  Mr. Arencibia has remained incarcerated since his arrest in January [DE 892] and is the only Defendant in custody.

A Sixth Superseding Indictment [DE 927] was returned, on May 8, 2024, adding two (2) codefendants, Gustavo Linares Guzman ("Defendant Linares") and Jose Armando Rivera Garcia ("Defendant Rivera Garcia"). The Sixth Superseding Indictment maintained the same three (3) conspiracy charges and the same time frame, i.e., January 2013 to May 28th, 2019.

The other remaining codefendants, Stephen Manuel Costa and Angel Caminero Alvarez had been previously indicted as part of the Second Superseding Indictment on June 10, 2021, and the initial Indictment on October 17th, 2019, respectively. Defendant Angel Caminero Alvarez is a fugitive.  Co-defendant Costa, upon information and belief, has been cooperating with the Government since at least December 2021, if not prior thereto.  *See United States v. Stephen Costa*, 15-cr-21004-Altonaga. Defendant Costa has had a supervised release violation pending since at least December 21, 2021. *See Id. at* [DE 79-126]. No Defendant, to the undersigned's knowledge, has ever had a supervised release violation hearing pending in this district for almost three years. Upon information and belief Costa went to prison in 2016 and was released in 2019 or 2020. The alleged property transfers would have occurred before Costa went to prison in 2016 and/or before 2021.  Costa has a change of plea hearing in this case scheduled for November 14th, 2024. [DE 1030]

The case was set for trial commencing on the trial period for November 18th, 2024. However, on October 30th, 2024, Co-Defendant Linares-Guzman filed a motion to continue the trial citing a scheduling conflict and requesting that trial be moved to the December 4th, 2024, trial calendar. [DE 1019]. On November 8th, 2024, the Court entered a paperless order granting Co-Defendant

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

Linares-Guzman's motion for continuance and re-scheduled the trial for the trial period commencing December 2nd, 2024. [DE 1029].

## II.   THE GOOD FAITH BASES FOR THE SUBPOENA AND THE REQUEST FOR THE DOCUMENT PRODUCTION

The time period set out in the subpoenas was dictated by the Government and not by the undersigned. As stated above, the time-period alleged in all three (3) charged conspiracies is from January 2013 to May 28th, 2019 (a 6 ½ year period). Discovery provided by the Government, specifically an interview report (ROI) of Government witness, Carlos Gonzalez (Gonzalez is Co-Defendant Costa's brother-in-law and upon information and belief the brother of non-party witness Annie Gonzalez), states:

**Gonzalez ROI dated 6/17/21 attached as *Exhibit "A"*:**

> "Costa placed all of his assets in the names of his trusted family members. He had a warehouse in the Tampa/St. Petersburg area that he sold and put the money in his wife's name. Costa purchased a property on 211 Davis St., which was also the name of a company Costa used. That property was under Gonzalez' name. Costa's uncle, Rene Lorenzo, was one of his most trusted family members. He had properties under his name that belonged to Costa in reality. Lorenzo lives in Weston, Fl. Carlos Casanueva used to be very involved with Costa and held properties under his name, but he got out and moved up north with his family."

*Exhibit A at p. 2 of 3.*

## III.   MATERIALITY, RELEVANCE, ADMISSIBLITY AND SPECIFICITY OF THE INFORMATION REQUESTED:

The non-party witness makes three arguments in support of her request for an order quashing the subpoena duces tecum. First, that she cannot be compelled to testify under the spousal privilege against adverse testimony. *See [DE 1033 at p. 2, n. 1].* Second, that the Government conducted an extensive investigation of Stephen Costa's finances, and the Government has not alleged any connection between Annie Gonzalez and any of the conduct alleged in the indictment. *See [DE 1033 at p. 2].* Third, that all property records that contain her

name and ownership information are readily available to Defendant Arencibia because they are public records. All three of these arguments are red-herrings and do not hold water when examined in detail.

***The Testimony of Annie Gonzalez (the marital privilege does not apply)*:**

First, the non-party witness, Annie Gonzalez, may not avail herself of the recognized marital privilege. *See [DE 1033 at p. 2, n. 1].* Rule 501 of the Federal Rules of Evidence authorizes federal courts to define privileges by interpreting common-law principles in light of reason and experience. *Jaffe v. Redmond,* 518 U.S. 1 (1996); *Trammel v. United States,* 445 U.S. 40 (1980). There are two (2) types of marital privileges: the marital confidential communications privilege and the spousal testimonial privilege.

It is well established that courts presumptively disfavor all privileges, including marital privileges, because they impede the search for the truth. *United States v. Singleton*, 260 F.3d 1295 (11th Cir. 2001). The marital confidential communications privilege allows **a defendant** to bar a spouse from revealing any confidential communications, while the marital privilege allows a witness to **refuse to testify against his or her spouse**. *Id.* (emphasis added). Defendant Arencibia is not the spouse of the non-party witness, Annie Gonzalez. Ms. Gonzalez' husband is Co-Defendant, Stephen Costa, who has been cooperating with the Government and is scheduled to plead guilty on November 14th, 2024. *See [DE 1030].* Therefore, Ms. Gonzalez will not be testifying against her husband because her husband will not be a defendant in the scheduled trial on December 2nd, 2024.

The marital privilege may only be asserted by the testifying spouse. *Trammel, supra*; see also, *United States v. Chapman,* 866 F.2d 1326 (11th Cir, 1989). Moreover, the privilege does not bar the admission of out-of-court statements of a non-testifying spouse, assuming the statements are otherwise admissible under the Confrontation Clause and the rules of evidence. *Id.* The marital

privilege does not protect those conversations made in furtherance of a conspiracy. *United State, v. Malekzadeh,* 855 F.2d 1492 (11th Cir. 1988). Furthermore, spousal communications are not intended to be confidential if they relate to business matters-matters which are inherently subject to conveyance to third parties. *Hanger Orthopedic Group, Inc. v. McMurray,* 181 F.R.D. 525 (MDFL 1998). Observations are not subject to protection under the marital communications privilege, and therefore such testimony is not inadmissible due to the privilege. *United States v. Harrison,* 2006 WL 1131938 (MDGA)

In the instant case, Annie Gonzalez' brother, Government witness, Carlos Gonzalez, was provided information concerning a business transaction whereby funds from the sale of a warehouse in Tampa were allegedly placed in Annie Gonzalez' name. That information could only have come from Annie Gonzalez or from Stephen Costa. Therefore, since the information was conveyed to a third party, i.e. Carlos Gonzalez, the marital communications privilege does not apply. Nor does it apply to any matters to which Annie Gonzalez will be questioned about in this case since her husband, Stephen Costa will not be a defendant at trial.

**The Government's alleged "Exhaustive Financial Investigation of Stephen Costa"**

While the Government does some very good financial investigations, it cannot and does not always find "ghost companies" or "companies in the names of straw owners" which are in reality owned by a defendant in a pending criminal case. This district is replete with instances where the Government has limited financial information regarding the assets of a defendant even when that defendant is cooperating with the Government.

The Court needs to keep in mind that the Government has allowed Mr. Costa to remain at liberty while he has had a pending supervised release violation before Chief Judge Altonaga since 2021. Furthermore, the Government does not always turn over in discovery what the defense deems to be *Brady/Giglio* material, i.e. information that a cooperating witness has concealed assets

or proceeds of unlawful activity from the Government. For example, in this case, the Government has yet to disclose what was the supervised release violation committed by Defendant Costa. All documents relating to that violation are under seal. *See United States v. Stephen Costa.* 15-cr-21004-Altonaga.

It is incredulous that counsel for Annie Gonzalez would argue that he "would imagine that the Government conducted an exhaustive financial investigation into Defendant Stephen Costa, who is being prosecuted for a second time for similar offenses," when counsel is a very experienced defense attorney in this community and understands that the Government is limited as to what it can discover regarding the financials of any defendant when straw owners and companies are involved and in this district that is a routine scenario in fraud and money laundering cases.

Furthermore, the undersigned has reviewed the discovery in this case and there is no "exhaustive financial investigation" of Stephen Costa. What the Government has provided are statements of cooperating co-conspirators and witnesses, bank records of companies used by the conspiracy to launder the proceeds of unlawful activity, and inventory receipts of evidence. There is no discovery pertaining to "financial investigations" of any individual involved in this case, outside of the companies used during the conspiracy period. There is no discovery listing properties, real or personal, purchased with the proceeds of unlawful activity by any individual.

**The Public Records of Properties owned by Annie Gonzalez**

Public records concerning ownership of real property are available IF you know the name of the individual or **the name of the entity** that owns the property and the location (county and state where the property is owned). Again, this is another red-herring argument by Annie Gonzalez because neither the Government nor Defendant Arencibia know the name of the entities or the property location of any real property owned by Stephen Costa and placed in the names of straw owners, including Annie Gonzalez or entities controlled by Annie Gonzalez.

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

According to the Government and proffered to the court at Defendant Arencibia's bond hearing, this case involves approximately seventy-five million dollars ($75,000,000.00) of laundered proceeds derived from illegal activity concerning diverted/adulterated pharmaceutical products. Stephen Costa is alleged to be one of the leaders of this conspiracy who allegedly received the lion's share of the proceeds. The Government also alleges that Stephen Costa was involved in the charged conspiracies since 2013, went to prison on a federal conviction for an identical charge, was released from prison in 2019/2020 and reengaged in the same criminal conduct. The alleged proceeds of unlawful activity attributed to him in this case are unrelated to the proceeds of criminal activity attributed to him in case number 15-cr-21004-Altonaga.

Therefore, the information provided by Annie Gonzalez' brother, Government witness, Carlos Gonzalez would appear at a minimum to be consistent with the conduct of Stephen Costa.

The non-party witness, Annie Gonzalez, does not allege that her expected testimony is not relevant to Defendant Arencibia's defense nor as an impeachment witness against her brother Carlos Gonzalez, nor does she deny that the proffered evidence provided by the undersigned to her counsel is false. *See Exhibit "A".*  Instead, her counsel argues that the Government's investigation does not show any transfers to her personally and therefore this Court should quash the subpoenas.[1] [DE 1033 at p. 3]. No statements under oath have been provided by Annie Gonzalez to refute the allegations by the Government witness, Carlos Gonzalez, in *Exhibit "A."*

At a minimum, the testimony of this non-party witness would be material, relevant, and admissible to either impeach Gonzalez and/or Costa, both of whom are testifying against Defendant Arencibia, if the non-party testifies that the allegations made by Gonzalez are not true;

---

[1] If the Government is not aware of the specific transfers of funds and/or property and/or locations of properties, of course it is not going to have any documentation showing the transfers. Upon information and belief, the Government has not sought nor obtained statements from Annie Gonzalez.



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

and/or she would provide impeachment testimony against Costa, who is cooperating and also testifying against Defendant Arencibia, if the information provided by Carlos Gonzalez is true.

***The Categories of Documents Requested from Annie Gonzalez:***

Defendant Arencibia, in addition to the nonparty witness' testimony at trial, has requested production of three (3) categories of documents directly related to the allegations made by Gonzalez (a trusted Costa family member and brother of Annie Gonzalez). The documents are clearly relevant to the Defendant's defenses at trial and as impeachment against Government witnesses Gonzalez and/or Costa.

Category 1: communications, i.e. text messages, WhatsApp messages, and/or emails between the non-party and Costa from 2013 to the present.[2] The communications sought relate to receipt of funds and transfers of property from Costa as set out in categories 2 & 3.

Category 2: bank statements showing any monies received from Stephen Costa from 2013 to the present. Any witness would know if they ever received any monies from Costa and when they received the funds. If she does not have any bank records that would show she received funds from Costa she can simply file a response with an affidavit advising that no such documents exist.

Category 3: copies of all warranty deeds, quit-claim deeds, bills of sale for any property, real or personal, that was purchased with funds received from Stephen Costa from 2013 to the present. Any witness would know if they ever purchased any property, real or personal, with funds received from Costa, what property was purchased, where it was located and under what name the property was titled. If she does not have any deeds or bills of sale that would show she purchased

---

[2] Again, the time frame was dictated by the Government, from 2013-2019, in the Sixth Superseding Indictment. The undersigned added an additional and more recent time frame (2019-present) because Costa has been on bond since at least 2020 even though he has had a supervised release violation hearing pending before Chief Judge Altonaga since 2021.



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

property with funds received from Costa she can simply file a response with an affidavit advising no such documents exist.

Thus, the documents, if they exist, would be material, relevant, and admissible through this non-party witness for impeachment purposes at a minimum.

## IV. LEGAL STANDARD AND ANALYSIS

Rule 17(c) of the Federal Rules of Criminal Procedure governs the use of subpoenas duces tecum in federal criminal proceedings. *See United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984). "A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id. 17(c)(2)*. A party seeking to subpoena documents "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974) (alteration added); *see also United States v. Marshall*, No. 07-20569-CR, 2008 WL 2474662, at *1 (S.D. Fla. Jun. 17, 2008) (acknowledging *Nixon* as the legal standard). A "subpoena for documents under Rule 17 'was not intended to provide a means of discovery for criminal cases'" but to "'expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.'" *United States v. Brown*, No. 11-60285, 2013 WL 1624205, at *3 (S.D. Fla. Apr. 15, 2013) (quoting *Nixon*, 418 U.S. at 698–99). The application for such a subpoena must be made in good faith and "not [be] intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700 (alteration added).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401 (alteration added). "Courts have noted that the specificity and relevance elements

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

are somewhat heightened in that they require more than the title of a document and conjecture as to its contents." *Brown*, 2013 WL 1624205, at *4 (citation and internal quotation marks omitted). Rule 17(c) "only reaches specifically identified documents that will be admissible as evidence at trial. . . ." *Silverman*, 745 F.2d at 1397 (citations omitted).

"Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *Nixon*, 418 U.S. at 702. "Without a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c)." *Id.* (citations omitted).

In the Eleventh Circuit, "impeachment materials may be subpoenaed by a Rule 17(c) subpoena" if relevant and specific. *Brown*, 2013 WL 1624205, at *4; *see also United States v. Thompson,* 310 F.R.D. 542 (S.D. Fla. 2015) (Compliance with defendant's request for Rule 17 subpoena for nonparty to produce documents not unreasonable or oppressive in prosecution for multiple counts of health care fraud where defendant and nonparty reached agreement to limit scope of subpoena and time period within which to comply. Requested documents, when limited to defendant's revised request, were sufficiently relevant to defendant's defense, were likely admissible at trial, and were specifically identified to extent possible, and extended time period within which nonparty was required to produce documents provided nonparty with sufficient time to comply and also satisfy Rule 17's goal to expedite trial by providing time and place before trial for inspection of subpoenaed materials.); *In re Martin Marietta Corp.,* 856 F. 2d 619 (4th Cir. 1988) (defendant charged with mail fraud in connection with Government's investigation of his employer, a defense contractor, was entitled to production of specific documents by employer which were relevant to his defense).

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

In *United States v. Lazaro Collazo,* Case No. 14-CR-20550-ALTONAGA, a very similar situation occurred. The undersigned, as counsel for Collazo, served two (2) Rule 17 subpoenas on non-parties for production of documents pre-trial. The non-parties, USAO-SDFL and Major League Baseball (MLB) filed motions to quash the subpoenas. The Court "Granted in Part and Denied in Part" the non-parties' motions to quash the subpoenas. *See [DE 229] in Case No. 14-CR-20550-Altonaga, a copy is attached for the Court's convenience as* **Exhibit "B"**. The Court ordered MLB to produce the records requested in the Second and Fifth Categories of the requested documents finding that the Defendant had made a good faith showing of relevance, admissibility and specificity. *Id.* at pp. 6-9.

Just like in *Collazo,* the Defendant, Arencibia, has requested production of specific documents that relate to payments by Government witness Costa, a co-conspirator, to the non-party witness, documents related to transfers of property by that co-conspirator to the non-party witness, who is his wife, and bank records showing deposits and/or transfers of funds received from that co-conspirator by the non-party witness. Defendant Arencibia has also requested evidence of communications between the non-party witness and that co-conspirator related to the above categories. As Judge Altonaga held in *Collazo*:

### 1. The Second Category

As for specificity, while it is true Collazo does not identify specific documents evidencing payment or other agreements between MLB and the individuals or entities — for instance, a dated receipt to a specific person — his request is sufficiently specific to satisfy Rule 17(c). By confining the request to documents "concerning payments," Collazo makes a good- faith, specific, and relevant request for information. Further, Collazo points out that payments or benefits conferred upon a witness are admissible for purposes of impeachment. In the Eleventh Circuit, "impeachment materials may be subpoenaed by a Rule 17(c) subpoena" if relevant and specific. *Brown*, 2013 WL 1624205, at *4. MLB argues the admissibility of this evidence depends "on whether and to what extent the witness in fact testified and incriminated the defendant, and whether the agreement provided some inducement to testify in some way regarding the defendant.

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

(MLB Resp. 11 (citing *United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988)) (footnote call number omitted)). Yet, as noted in *LaRouche Campaign*, "Observation of this general rule [that impeachment evidence is only permitted if the witness testifies], however, is left to the sound discretion of the district court." *LaRouche Campaign*, 841 F.2d at 1180 (citation omitted). Exercising its discretion, and noting the witnesses who will testify are not yet known, the Court finds Collazo's second category proper in part."

*Id.* at pp. 7 & 8.

### 2. The Fifth Category

Collazo does not address MLB's admissibility argument in the relevant section of the Reply. (*See* Reply 35–36). Instead, he argues the "reliability of these records [is] critical to the charges" and the list is necessary to verify the authenticity of the records. (*Id.* 36 (alteration added)). Still, throughout the Reply, Collazo makes a number of arguments the requested documents could be used as impeachment against witnesses. (*See e.g., id. 10–11*). The Eleventh Circuit has sanctioned the use of a subpoena to obtain out-of-court, written statements intended for use as impeachment against the defendant, a prospective witness. See *Silverman*, 745 F.2d at 1396 (noting subpoena sought "complaints made against him by his former clients or The Florida Bar"). Similarly, the statements Bosch previously produced to MLB concerning the medical records' modification or destruction could be used to impeach his expected testimony about the accuracy of those records. As with the second category of requested documents, the scope of this request is limited, specific, and clearly relevant. Accordingly, the fifth category is permissible.

*Id.* at p. 9.

In the instant case, the non-party witness will testify on the defense case, as either an impeachment witness against Government witness Gonzalez and/or as an impeachment witness against Costa. Again, Costa will be a Government witness, not a defendant, at the trial on December 2nd, 2024.

### V. THE MOTION TO QUASH IS UNTIMELY AND THEREFORE THE NON-PARTY HAS WAIVED ANY OBJECTIONS TO THE PRODUCTION OF DOCUMENTS

Rule 17(c)(2) states that "On motion made promptly, the court may quash or modify the subpoena." *Rule 17, Fed. R. Crim. Pro.* Rule 17 is substantially the same as Rule 45, Federal Rules

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

of Civil Procedure. *See Advisory Committee Notes in Rule 17.* Rule 45(d)(2)(B) clearly states that a person commanded to produce documents or tangible things or to permit inspection may serve a written objection on the party designated in the subpoena. However, the objection **must be served** before the earlier of the time specified for compliance or 14 days after the subpoena is served. *Id. (emphasis added).*

The subpoena duces tecum in this case was served on October 22nd on the non-party witness, Annie Gonzalez. *See Exhibit A to Motion to Quash [DE 1033].* The time specified for compliance on the subpoena was November 4th, 2024. *Id.*

The non-party, Annie Gonzalez filed her motion to quash the subpoena on November 12th, 2024, eight (8) days after the time specified in the subpoena for compliance. As a general rule, when a party fails to timely object to interrogatories, production requests or other discovery efforts, the objections are deemed waived. *Bailey Industries v. Clip Inc.,* 270 F.R.D. 662 (2010); *see also In re United States,* 864 F.2d 1153, 1156 (5th Cir. 1989). This is so even though a party had an objection to make. *Jaffe v. Grant,* 793 F.2d 1182, 1190 n. 6 (11th Cir. 1986) (objection based on Fifth Amendment waived by failure to timely assert such privilege in response to discovery*); Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540 (10th Cir. 1984) (same as to work product).

Because the non-party failed to timely file written objections before the time specified for compliance, she has waived any objections to production of the requested documents.

## VI. CONCLUSION

Based on the foregoing, Defendant Arencibia asserts that the non-party, Annie Gonzalez' motion to quash should be denied and she should be ordered to produce the requested documents on or before November 25th, 2024 or if the documents do not exist, she should be required to file a response with an affidavit stating what efforts she made to locate the documents and affirming

under oath that the requested documents do not exist and also advising whether the documents ever existed and if so, what happened to the documents.

Respectfully submitted,

**QUINTERO BROCHE, P.A.**
*Attorneys for Boris Arencibia*
75 Valencia Avenue, Suite 800
Coral Gables, Florida 33134
Tel: (305)446-0303
Fax: (305)446-4503

By: */s/    Frank Quintero, Jr.*
    FRANK QUINTERO, Jr.
    FLORIDA BAR NO.: 399167


## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that on November 13, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: */s/    Frank Quintero, Jr.*
    FRANK QUINTERO, Jr.
    FLORIDA BAR NO.: 399167

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

# EXHIBIT A

FD-302 (Rev. 5-8-10)

- 1 of 3 -

## FEDERAL BUREAU OF INVESTIGATION



Date of entry    06/17/2021

CARLOS ROBIN GONZALEZ, date of birth 2/20/1993, social security number 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, residing at 10530 SW 118TH Ave, Miami, Florida, 33186, cellular telephone number (305) 972-6989, was telephonically interviewed due to the ongoing Covid-19 pandemic restrictions on in-person meetings. Present during the interview was GONZALEZ's attorney, Todd Yoder, telephone number 305-379-6667, Assistant United States Attorneys (AUSA) Walter Norkin and Frank Tamen, Federal Bureau of Investigation (FBI) Special Agent (SA) Adam Wolfe and Food and Drug Administration - Office of Criminal Investigations (FDA-OCI) SA Janelle Rudie.

Prior to beginning the interview, AUSA Norkin went over the proffer agreement GONZALEZ had previously signed. GONZALEZ stated he understood the terms and agreed to continue with the interview. After being advised as to the identities of the interviewing agents and the nature of the interview, GONZALEZ voluntarily provided the following information:

Before STEPHEN COSTA reported to prison he had GONZALEZ and FRANK ALVAREZ come over to his house. COSTA wanted to introduce ALVAREZ to FRANK VALCARCE. COSTA said VALCARCE could broker deals for product and provide a change avenue for the money. VALCARCE went by the nickname "BLACKBIRD" and drove a white Mercedes S63. COSTA also introduced them to another smaller supplier named JAP. GONZALEZ did not know his real name. He was nicknamed JAP because he looked Asian, although he was Cuban. COSTA instructed ALVAREZ that he was to make sure COSTA, GONZALEZ, and the rest of his crew was paid while COSTA was in prison. GONZALEZ did not know what COSTA's cut was to be or how ALVAREZ was to get him the money. COSTA and ALVAREZ seemed to have that worked out.

COSTA also introduced ALVAREZ to JAVIER ARBOLAEZ, aka "LJ." LJ stood for Lumberjack because he was a big strong guy. ARBOLAEZ was another person who could source product. His father was in the business for a long time, and they had ways to launder money through the Dominican Republic. Their product

---

Investigation on   12/16/2020   at   Miramar, Florida, United States (Phone)

File #   245K-MM-113449-CruzHernandez                                    Date drafted   01/20/2021

by   WOLFE ADAM

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

245K-MM-113449-CruzHernandez

Continuation of FD-302 of <u>(U) CARLOS GONZALEZ phone debrief</u> , On <u>12/16/2020</u> , Page <u>2 of 3</u>

may come from the Dominican Republic GONZALEZ knew that ARBOLAEZ visited COSTA in prison multiple times.

When COSTA finally went to prison he left GONZALEZ and COSTA's wife, ANNIE GONZALEZ, with a lot of debt and bills to pay. GONZALEZ was making payments on COSTA's 2014 Mercedes and his credit card bills, particularly his Discover card which had a high balance. At first GONZALEZ was using his own money to pay COSTA's bills, but COSTA eventually gave him a CitiBank debit card to use.

The interviewing Agents asked why GONZALEZ was paying COSTA's bills while he was in prison with his own money. GONZALEZ responded that COSTA had a way of making people do things for him. GONZALEZ finally stopped making the payments because he could not afford to do so anymore. SALEMI paid off COSTA's credit card bill, which was somewhere around $20,000, and made his car payments for his Mercedes and Range Rover as well.

COSTA placed all of his assets in the names of his trusted family members. He had a warehouse in the Tampa/St. Petersburg area that he sold and put the money in his wife's name. COSTA purchased a property on 211 Davis St, which was also the name of a company COSTA used. That property was under GONZALEZ name. COSTA's uncle, RENE LORENZO, was one of his most trusted family members. He had properties under his name that belonged to COSTA in reality. LORENZO lives in Weston, FL. CARLOS CASANUEVA used to be very involved with COSTA and held properties under his name, but he got out and moved up north with his family.

The interviewing Agent asked GONZALEZ how he came to process diverted pharmaceuticals out of his parent's house. GONZALEZ responded that ALVAREZ and GONZALEZ had discussed that they did not want to keep renting places in their own names, so GONZALEZ offered doing it at his parent's house for a while.

The interviewing Agent asked if GONZALEZ had any more information about an individual named "KIQUE". GONZALEZ went to his house one time, which was around NW 8th or 9th St and 137th Avenue in Miami. He drove an older black, BMW 6 series at the time.

SA WOLFE scanned and uploaded his original interview notes and placed them into the digital 1A, and placed the original interview notes into the

FD-302a (Rev. 5-8-10)

245K-MM-113449-CruzHernandez

Continuation of FD-302 of  (U) CARLOS GONZALEZ phone debrief _____ , On  12/16/2020  , Page   3 of 3

physical 1A envelope.

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 14-20550-CR-ALTONAGA**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**LAZARO DANIEL COLLAZO**, *et al.*,

      Defendants.

_____/

**<u>ORDER</u>**

**THIS CAUSE** came before the Court on Defendant, Lazaro Daniel Collazo's ("Collazo['s]") Motion for the Issuance of Rule 17(c) Subpoenas and to Compel the United States Attorneys' Office and Major League Baseball to Comply . . . (the "Motion") [ECF No. 145], filed November 20, 2014. The United States of America (the "Government") filed a Response . . . ("Government Response") [ECF No. 174] on December 8, 2014. The Office of the Commissioner of Baseball ("MLB") filed an Opposition . . . ("MLB Response") [ECF No. 175] on December 8, 2014. Collazo filed a Collective Reply . . . ("Reply") [ECF No. 179] on December 15, 2014. The Court has carefully reviewed the parties' written submissions and applicable law.

Collazo seeks the production of myriad communications and documents from the Government and MLB. (*See* Mot., Ex. 1 (the "MLB Subpoena" and the "Government Subpoena") [ECF No. 145-1]). He asserts the documents requested from MLB "go directly to the heart of the charges against Mr. Collazo and . . . would show that MLB directly influenced/altered the testimony of the cooperating witnesses against Mr. Collazo." (Mot. 3

CASE NO. 14-20550-CR-ALTONAGA

(alteration added); *see also id*. 13–14). As for the documents requested from the Government, Collazo asserts they must be produced because they were "obtained by the Government by solicitation or voluntarily from third persons and/or entities." (*Id*. 22 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951))). He argues Anthony P. Bosch, expected to be a key witness in Collazo's prosecution, violated the law and his plea agreement with the Government, "yet no negative action was taken by the" United States Attorneys' Office (the "USAO"). (Mot. 23; *see also id*. 29).

The Government and MLB oppose the Motion. The Government asserts the document requests are insufficiently specific, overly broad, and would require disclosure beyond the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963), and related cases. (*See* Gov't Resp. 4–5, 7–16). MLB contends the information requests are a "fishing expedition," and Collazo cannot demonstrate the materials sought are relevant or admissible, or described sufficiently specifically. (MLB Resp. 1).

## I. LEGAL STANDARD

Rule 17(c) of the Federal Rules of Criminal Procedure governs the use of subpoenas *duces tecum* in federal criminal proceedings. *See United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984). "A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." FED. R. CRIM. P. 17(c)(1). "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." *Id*. 17(c)(2). A party seeking to subpoena documents "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3)

2

CASE NO. 14-20550-CR-ALTONAGA

specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974) (alteration added); *see also United States v. Marshall*, No. 07-20569-CR, 2008 WL 2474662, at *1 (S.D. Fla. Jun. 17, 2008) (acknowledging *Nixon* as the legal standard). A "subpoena for documents under Rule 17 'was not intended to provide a means of discovery for criminal cases'" but to "'expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.'" *United States v. Brown*, No. 11-60285, 2013 WL 1624205, at *3 (S.D. Fla. Apr. 15, 2013) (quoting *Nixon*, 418 U.S. at 698–99). The application for such a subpoena must be made in good faith and "not [be] intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700 (alteration added).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." FED. R. EVID. 401 (alteration added). "Courts have noted that the specificity and relevance elements are somewhat heightened in that they require more than the title of a document and conjecture as to its contents." *Brown*, 2013 WL 1624205, at *4 (citation and internal quotation marks omitted). Rule 17(c) "only reaches specifically identified documents that will be admissible as evidence at trial . . . ." *Silverman*, 745 F.2d at 1397 (citations omitted).

"Enforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *Nixon*, 418 U.S. at 702. "Without a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c)." *Id.* (citations omitted).

CASE NO.  14-20550-CR-ALTONAGA

## II. ANALYSIS

### A. The Government Subpoena

The Government Subpoena requests the following: 1) "any and all communications" between the USAO and seven criminal defendants and their attorneys, as well as between the USAO and prior counsel for Collazo; 2) "any and all communications" between the USAO and "any and all individuals granted immunity . . . in connection with any investigation concerning Biogenesis of America, LLC, and/or the related distribution of Performance Enhancing Substances to minors and/or major league baseball players" and their attorneys; and 3) "any and all documents . . . and/or communications turned over . . . to the USAO from a third person . . . in connection with the investigation concerning Biogenesis of America, LLC, Lazaro Collazo, and/or the related distribution of Performance Enhancing Substances . . . ."  (Government Subpoena App. A (alterations added)).

These broad requests are precisely the type of "fishing expedition" a Court may not permit in a Rule 17(c) subpoena. *Nixon*, 418 U.S. at 700 (internal quotation marks omitted). The requests do not even purport to name any "specifically identified documents" required for the enforcement of a Rule 17(c) summons, *Silverman*, 745 F.2d at 1397 (citations omitted), instead seeking broad swaths of data in the Government's possession.  The Motion contains mere conjecture as to the contents of these numerous, unnamed documents, and it is therefore insufficient to warrant the issuance of a Rule 17(c) subpoena to the Government. *See Brown*, 2013 WL 1624205, at \*4 (citation omitted).[1]

---

[1] A portion of Collazo's Reply appears to concede the request is the type of fishing expedition permitted in civil litigation but disallowed by Rule 17(c); one heading is captioned, "The Requests . . . Are Sufficiently Specific *to Lead to* Relevant and Evidentiary Documents . . . ."  (Reply 3 (alterations and

4

CASE NO.  14-20550-CR-ALTONAGA

Collazo's reliance on *Bowman* is misplaced (*see* Reply 12–14), as the admittedly broad language of that decision has been limited by the requirements of *Nixon*.  *See Nixon*, 418 U.S. at 698 (noting "cases decided in the wake of *Bowman* have generally followed Judge Weinfeld's formulation in *United States v. Iozia*, 13 F.R.D. 335, 338 ([S.D.N.Y.] 1952), as to the required showing" (alteration added)).  Collazo acknowledges a Rule 17(c) subpoena to the Government must satisfy the standards established in *Nixon*.  (*See* Mot. 9).

**B.  The MLB Subpoena**

The MLB Subpoena requests the following categories of materials: 1) "any and all documents . . . and/or communications between" MLB and selected government entities, including "any other State and/or Federal Law Enforcement Agency, concerning Biogenesis of America, LLC, Biokem, LLC, Anthony P. Bosch, Carlos Acevedo," and Collazo; 2) "any and all agreements . . . and/or other documents concerning payments made by or on behalf of [MLB] to or for the benefit of" a number of individuals and businesses, including "any written agreements between any of the individuals and/or entities referenced herein and" MLB; 3) "any and all documents . . . and/or communications relating to the 2009 investigation of Manuel Ramirez, Anthony Bosch and/or Pedro Bosch in relation with the distribution and/or use of Performance Enhancing Substances"; 4) "any and all memorandums, proffers, statements, interview notes, and/or transcripts in connection with meetings with Anthony Bosch, Carlos Acevedo, and/or any other witness involved in the investigation pertaining to" them, Collazo, or two businesses; and 5) "any and all lists, correspondences, and/or documents by Anthony Bosch (and/or his attorney/representative) to MLB identifying and describing with particularity any documents

---

emphasis added; capitalization omitted)).

CASE NO.  14-20550-CR-ALTONAGA

destroyed, amended, sold or otherwise made unavailable prior to the effective date of the June 3, 2013 agreement between Bosch and MLB."  (MLB Subpoena App. A (alterations added)).

The first, third, and fourth categories of the MLB Subpoena are improper for the same reasons as the Government Subpoena.  By seeking "any and all" documents "concerning," "relating to," or "in connection with" a myriad of individuals, businesses, government entities, and investigations, Collazo fails to indicate with the requisite specificity the documents he requests or how they will be admissible. *See Brown*, 2013 WL 1624205, at *5 (calling Rule 17(c) subpoena a "fishing expedition" when it sought an "investigative file 'as it relates to Mr. Moss's involvement with Mr. Brown,'" documents "'containing any facts which touch upon Mr. Moss's involvement with Mr. Brown,'" and correspondence "'which includes information touching upon Mr. Moss's involvement with Mr. Brown'" (brackets, emphasis, and citation omitted)).  The Court now turns to the second and fifth categories of requests.

### 1. The Second Category

As for the second category of requested documents, the Court is satisfied Collazo makes the requisite showing under *Nixon* entitling him to a portion of the requested documents.  This category concerns agreements and documents about payments made by or on behalf of MLB to a number of individuals with information relevant to the prosecution of Collazo.  Collazo points to an agreement between MLB and Bosch requiring MLB to pay for his attorneys and security services, and further notes testimony given by attorney Susy Ribero-Ayala indicates MLB also paid for the attorney for Ms. Ribero-Ayala and a publicist for Bosch. (*See* Mot. 12–14).  Collazo notes this appears to conflict with the MLB-Bosch agreement, which states MLB would not provide "anything else of value to Bosch" besides what is explicitly stated in the agreement. (*Id.*

6

CASE NO. 14-20550-CR-ALTONAGA

13 (footnote call number and internal quotation marks omitted)).

Collazo posits these and other additional benefits from MLB could influence Bosch's testimony — presumably in ways not otherwise disclosed by the Government pursuant to its *Brady* and related obligations, if the Government did not possess the information. (*See id.* 16, 18). MLB argues this request fails to sufficiently identify specific documents by seeking "'any and all'" records or agreements with or payments to individuals or entities. (MLB Resp. 10). It also asserts Collazo has failed to show the materials sought are admissible, such as for impeachment; he instead casts a wide net hoping to find an agreement that exposes the bias of a trial witness. (*See id.* 11).

As for specificity, while it is true Collazo does not identify specific documents evidencing payment or other agreements between MLB and the individuals or entities — for instance, a dated receipt to a specific person — his request is sufficiently specific to satisfy Rule 17(c). By confining the request to documents "concerning payments," Collazo makes a good-faith, specific, and relevant request for information. Further, Collazo points out that payments or benefits conferred upon a witness are admissible for purposes of impeachment. In the Eleventh Circuit, "impeachment materials may be subpoenaed by a Rule 17(c) subpoena" if relevant and specific. *Brown*, 2013 WL 1624205, at *4. MLB argues the admissibility of this evidence depends "on whether and to what extent the witness in fact testified and incriminated the defendant, and whether the agreement provided some inducement to testify in some way regarding the defendant." (MLB Resp. 11 (citing *United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988)) (footnote call number omitted)). Yet, as noted in *LaRouche Campaign*, "Observation of this general rule [that impeachment evidence is only permitted if the

7

CASE NO. 14-20550-CR-ALTONAGA

witness testifies], however, is left to the sound discretion of the district court." *LaRouche Campaign*, 841 F.2d at 1180 (citation omitted). Exercising its discretion, and noting the witnesses who will testify are not yet known, the Court finds Collazo's second category proper in part.

Two modifications are necessary. *See* FED. R. CRIM. P. 17(c)(2). First, the Court perceives of no scenario in which representatives of the Department of Justice or the USAO for the Southern District of Florida would testify in this matter. Thus, these two entities are excluded from the second category. Finally, the last sentence of this category impermissibly expands the scope of the request beyond the specific area of "payments" contained in the first sentence. The last sentence instead seeks "any written agreements between" MLB and the identified individuals and entities — agreements that could include anything imaginable, and the relevance of which has not been explained by Collazo. (*See* Mot. 12–18). Accordingly, the last sentence is further excluded from this second request. *See Brown*, 2013 WL 1624205, at *4 (noting courts "require more than the title of a document and conjecture as to its contents" (citation and internal quotation marks omitted)).

### 2. The Fifth Category

Bosch's agreement with MLB required him to describe documents destroyed, altered, or transferred to others, and identify individuals who might have access to those documents. (*See* Mot. 21). Collazo's fifth category seeks production of the list Bosch presumably provided to MLB in fulfillment of his obligation, contained in Section B(2) of the June 3, 2013 agreement. (*See* MLB Subpoena App. A). Collazo argues this list would bear on the integrity and reliability of the medical records at issue in his prosecution. (*See* Mot. 21–22). MLB, meanwhile, argues

8

CASE NO. 14-20550-CR-ALTONAGA

Collazo does not assert the list exists, or how such a list would be admissible given it would be considered hearsay. (*See* MLB Resp. 15).[2]

Collazo does not address MLB's admissibility argument in the relevant section of the Reply. (*See* Reply 35–36). Instead, he argues the "reliability of these records [is] critical to the charges" and the list is necessary to verify the authenticity of the records. (*Id.* 36 (alteration added)). Still, throughout the Reply, Collazo makes a number of arguments the requested documents could be used as impeachment against witnesses. (*See, e.g., id.* 10–11). The Eleventh Circuit has sanctioned the use of a subpoena to obtain out-of-court, written statements intended for use as impeachment against the defendant, a prospective witness. *See Silverman*, 745 F.2d at 1396 (noting subpoena sought "complaints made against him by his former clients or The Florida Bar"). Similarly, the statements Bosch previously produced to MLB concerning the medical records' modification or destruction could be used to impeach his expected testimony about the accuracy of those records. As with the second category of requested documents, the scope of this request is limited, specific, and clearly relevant. Accordingly, the fifth category is permissible.

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that the Motion [**ECF No. 145**] is **GRANTED in part** and **DENIED in part** as stated herein. MLB shall produce the required documents on or before **January 22, 2015**. The Government Subpoena shall not issue.

---

[2] MLB also argues Rule 17(h) forbids disclosure of any such list. (*See* MLB Resp. 15). "No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." FED. R. CRIM. P. 17(h). But "Rule[] 17(h), Rule 26.2, and the Jencks Act only apply to statements in the government's possession." *United States v. Young*, No. 03-20400 BV, 2004 WL 784840, at *2 (W.D. Tenn. Mar. 4, 2004) (alteration added; citations omitted).

9

CASE NO.  14-20550-CR-ALTONAGA

**DONE AND ORDERED** in Miami, Florida, this 9th day of January, 2015.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

10