IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 19-CR-20674-GAYLES

UNITED STATES OF AMERICA,

v.

BORIS ARENCIBIA., *et al*

Defendants.

_____

**NON-PARTIES RENE LORENZO'S AND CALOS CASANUEVAS'
REPLY TO BORIS ARENCIBIA'S RESPONSE TO MOTION
TO QUASH SUBPOENAS DUCES TECUM**

Non-parties, Rene Lorenzo and Carlos Casanueva, reply to Defendant Boris Arencibia's response to their motion quash the two subpoenas *duces tecum*, respectively, which Mr. Arencibia served on them.

The Motion to Quash was Timely.

Mr. Arencibia argues that Messrs. Lorenzo's and Casanueva's motion to quash is untimely. Arencibia's Response, ECF 1036, at 9. According to Mr. Arencibia, the motion to quash was due on November 4, 2024, the date he placed in the subpoenas for the advanced production of the documents. Mr. Arencibia is wrong.

*First*, a review of the docket shows that Mr. Arencibia did not move the Court for the advance production of documents before trial. Hence, the return date on the subpoena was November 18, 2024, the trial date in place when Arencibia served the subpoenas. Therefore, Mr. Arencibia's demand that Messrs. Lorenzo and Casanueva produce documents before November 18, 2024, is just that, *his* demand and nothing

1

more. *See* Fed R. Crim P. 17 (c) (providing that the *Court* may direct the advanced production of documents before trial). In fact, the Court continued trial to December 2, 2024, and the Court provided those non-parties and witnesses subject to Mr. Arencibia's trial subpoenas until December 2, 2024 to both appear to testify *and* produce documents, showing that the Court did *not* require anyone who Mr. Arencibia served with a trial subpoena to produce any documents before trial. *See* Order Granting Defendant Boris Arencibia's Motion for Order Revalidating Trial Subpoenas, ECF 1038. Hence, Mr. Arencibia's demand that anyone produce documents by November 4, 2024 is a legal nullity. It does not have the Court's backing.

*Second*, even though Mr. Arencibia failed to obtain a Court order requiring the production of documents before trial, the undersigned, on behalf of Messrs. Lorenzo and Casanueva, nevertheless endeavored to file the motion to quash by November 4, 2024 to avoid any delay in ligating the motion. However, we were not permitted to file the motion to quash on November 4, 2024, when we were ready to file it, because when attempting to file the motion to quash, the undersigned learned that the Clerk's office will not allow a non-party in a criminal case to file any documents in the case without first obtaining permission to file from the presiding judge. Here, after contacting the Clerk, both the Clerk and the undersigned made such a request on November 4, 2024. Two days then passed before the Judge's staff communicated that the Judge granted Messrs. Lorenzo and Casanueva permission to file their motion to quash.

Further, after the original meet- and-confer discussion between counsel, on November 4, 2024, the undersigned again called and told counsel to Mr. Arencibia that we indeed would be filing a motion to quash. So, Mr. Arencibia was aware that he would be facing a motion to quash his subpoenas. The filing of the motion to quash on November 6, 2024 does not pose any prejudice to Mr. Arencibia.

*Third*, notwithstanding the Advisory Committee Notes, Rule 17 only requires *prompt* action. Here, Messrs. Lorenzo and Casanueva, who were served on October 22 and 24, respectively, were given roughly two weeks to produce documents, which is far less than the 30 days in which parties must respond to discovery requests in the civil cases which Mr. Arencibia cites in his response. ECF 1036 at 9 (citations committed). Messrs. Lorenzo and Casanueva acted promptly as required by the Rule.

Mr. Arencibia's Response Fails to Show that his Subpoenas Meet the *Nixon* Standard.

In his response, Mr. Arencibia opposes the motion to quash and doubles down on his fishing expedition. Among other things, he claims that we argue that because the government's discovery does not show any transfers to Messrs. Lorenzo and Casanueva the Court should quash the subpoena. ECF 1036 at 4. While the fact the government's exhaustive financial investigation fails to show any transfers whatsoever from Stephen Costa to Messrs. Lorenzo and Casanueva is relevant to showing why Mr. Arencibia cannot identify any specific evidence which he seeks with the subpoenas, we did not argue that that the lack of such evidence is itself why the subpoenas should be quashed. Rather, we argue that the categories of items the

3

subpoenas demand fail to meet the *Nixon* standard, that it is that the subpoenas fail to seek known evidence, which is specifically identified, relevant, and admissible. As we show in the motion quash, Arencibia's *any and all* demands scream fishing expedition.

Further, according to Mr. Arencibia, Messrs. Lorenzo's and Casanueva's testimony and the records his subpoenas seek will serve to impeach Mr. Costa, or, alternatively, to impeach cooperating defendants Mohmmad Salemi and Carlos Gonzalez.[1] ECF 1036 at 9 ("In the instant case, the non-party witnesses will testify on the defense case, as either impeachment witnesses against Government Witnesses Gonzalez and Salimi and/ or as impeachment witnesses against Costa for withholding evidence of ill-gotten gains/ assets from the government"). Mr. Arencibia, however, failed to address a glaring problem with his quest for impeachment evidence: whether Mr. Costa was hiding assets with Messrs. Lorenzo and Casanueva is a collateral matter for which impeachment through extrinsic evidence is disallowed. *See* Motion to Quash, ECF 1025, at 8 (arguing that evidence of Costa hiding assets with his family members is a collateral matter which is not subject to impeachment with extrinsic evidence) (citing *United States v. Russo*, 796 F.2d 1443, 1454 (11th Cir. 1986); *United States v. Ndiaye*, 434 F.3d 1270, 1282 (11th Cir. 2006)).

---

[1] Some of the purported witness statements to the FBI and the prosecutors - that Costa hid "barrels" of cash in his uncle's backyard - are preposterous. *See* ECF 1036, ROI of Mohmmad Salemi, Exhibit B at 23 (reporting that Salemi claimed that he "heard" that Costa hid barrels of cash in his uncle's backyard). Notably, Mr. Arencibia did not subpoena the barrels of cash.

4

Finally, Mr. Arencibia relies heavily on Chief Judge Altonaga's order in *United States v. Collazo*, Case No. 14-cr-20550-Cr-Altonaga, which he attached as exhibit C to his response. A close reading of the Chief Judge's order, however, undercuts Mr. Arencibia's arguments here. Collazo was prosecuted for providing Major League Baseball players with performance enhancing drugs (peds) along with Anthony P. Bosh, who the government made a star witness against Collazo. In that case, the discovery showed that MLB had extensively investigated Bosh and his infamous Biogenesis Laboratory and played an integral role in developing the government's evidence against Collazo and the other defendants. *See United States v. Collazo*, Case No. 14-cr-20550, Defendant's Motion for Issuance of Rule 17 (c) Subpoenas and to Compel the United States and Major League Baseball to Comply with the Subpoenas Prior to Trial, ECF 145 at 3.

Leveraging the evidence which it marshalled against Bosh, his father, brother and daughter while also agreeing to pay Bosh and recommend to the government that it "consider" his cooperation to MLB, MLB flipped Bosh as a witness against its all-star MLB players who Bosh and Biogenesis had been supplying with peds. *Id.* at 13-16 (detailing the extent of MLB's involvement the government's prosecution and benefits MLB obligated itself to confer on Bosh pursuant to a written agreement between MLB and Bosh).

Collazo moved Judge Altonaga to issue Rule 17(c) subpoenas to both the government and MLB and order the advance production of several categories of documents listed in the subpoenas. The government and MLB opposed Collazo's

5

motion and the issuance of the subpoenas. ECF 1036, Exhibit C, Judge Altonaga's Order. Like the "any and all" demands Mr. Arencibia makes with his subpoenas, Collazo's subpoena to the government requested multiple categories of "any and all" documents and communications, which Judge Altonaga summarily quashed as the sorts of "broad requests that are precisely the type of 'fishing expedition' a Court may not permit." *Id*. at 4.

Collazo's subpoena to MLB requested five categories of documents from MLB. Judge Altonaga rejected three of the categories of documents Collazo demanded from MLB for the same reason she quashed Collazo's subpoena to the government, Collazo was fishing and failed to meet the *Nixon* standard. *Id*. at 5-6. Judge Altonaga relented on two categories in the subpoena, categories two and five, while nevertheless imposing some limitations. *Id*. at 6-7. But the impeachment evidence which Collazo sought in categories two and five in his subpoena to MLB was a far cry from the evidence on collateral matters which Mr. Arencibia claims he seeks here.

In a case in which MLB, the biggest victim of the Biogenesis peds distribution ring, was paying Bosh's attorney's fees, security, and publicists, category two of Collazo's subpoena to MLB sought evidence of payments and benefits which MLB made to Bosh. *Id*. Evidence of such payments and benefits to Bosh would serve to impeach his testimony implicating Collazo. *Id* at 7.

MLB paid Bosh to *be* a witness. In fact, he was a victim paid witness. *See United States v. Collazo*, Case No. 14-cr-20550, ECF 145 at 15-16 (Collozo detailing for Judge Altonaga that, in addition to his security and a publicist, MLB paid about

6

a $1,000,0000 to Bosh's lawyers, over $30,000 in Bosh's child support, and paid other witnesses substantial sums). Unlike Costa's purported hidden assets, evidence of which Mr. Arencibia is praying he can turn up, there was nothing collateral about confronting a key government witness like Bosh with evidence from the victim showing that it was paying him substantial sums to testify.

Similarly, Collazo's fifth category of documents in his subpoena to MLB, which Judge Altonaga upheld, unlike here, did not seek evidence relating to a collateral matter. Bosh had agreed with MLB to describe for it those documents which he had destroyed, altered, or transferred to others. *Id.* at 8. Finding that on this point the subpoena was requesting Bosh's own prior statements that Collazo could employ to impeach Bosh's testimony about the accuracy of medical records at issue in the case, Judge Altonaga permitted the demand or request for the witness' prior statements. *Id.* at 9.

Here, by contrast, *any and all* communications between Stephen Costa and Messrs. Lorenzo and Casanueva, respectively, and evidence of Costa purportedly hiding assets, are not akin to a witness' prior statements on a key issue in the case. Again, Mr. Arencibia makes unspecific demands for evidence, which, at best, according to him, may serve as extrinsic evidence to impeach witnesses on matters collateral to the case against him. The evidence Mr. Arencibia seeks here is nothing like the evidence of victim payments to a government witness to influence or buy his testimony and the witness' own prior statements about critical evidence against the defendant.

Mr. Costa Does not Appear to be a Witness.

Among the main reasons underlying Mr. Arencibia's search for purported impeachment evidence about Stephen Costa is that he believes Mr. Costa will testify against him at trial. Mr. Arencibia, however, it seems, is mistaken about that. On November 14, 2024, Mr. Costa pled guilty. *See* Plea Agreement, ECF 1044. Mr. Costa's plea agreement does *not* contain any so-called cooperation language, showing that Mr. Costa agreed to cooperate with the government and testify, if necessary, against his alleged co-conspirators, like Mr. Arencibia.

The plea agreement, nevertheless, does contain a paragraph providing that there are no other agreements, promises, representations, or understandings between Mr. Costa and the United States. *Id.* at ¶ 15. Indeed, Mr. Costa's detailed factual proffer does not even mention Mr. Arencibia. ECF 1045, Stepehen Costa Factual Proffer. Hence, if Mr. Costa is a cooperating witness who will testify against Mr. Arencibia, he and the government would have just misled the Court about whether there are any other agreements or understandings between the parties. That seems most unlikely. As such, it appears that Mr. Arencibia's need for evidence to impeach Mr. Costa is moot.

That leaves Mr. Arencibia's claim that he needs the records he demands to impeach Salemi and Gonzalez. However, as we detailed here and the motion to quash, Salemi's and Gonzalez' hearsay statements about Stephen Costa purportedly trying to hide assets with his family members represent collateral matters not subject to

impeachment with extrinsic evidence. As such, the purported impeachment evidence Mr. Arencibia seeks is of limited relevance and inadmissible.

## CONCLUSION

In sum, Boris Arencibia is trolling for purported impeachment evidence with dragnet subpoenas. He fails to identify specific evidence which is both relevant and admissible. At most, he seeks inadmissible impeachment evidence on collateral matters. Rather than help him, Judge Altonaga's order in the *Collazo* case illustrates why the Court should grant Messrs. Lorenzo's and Casanueva's motion to quash. And he is mistaken that Mr. Costa will testify against him. As such, the Court should quash the subpoenas which Mr. Arencibia served on Messrs. Lorenzo and Casanueva.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 15, 2024, a true and correct copy of the foregoing has been filed and served upon all counsel of record.

Respectfully submitted,

*s/ Henry P. Bell*
Henry P. Bell
Fla. Bar. No. 090689
**Bell Rosquete Reyes Esteban, PLLC**
999 Ponce De Leon Blvd,
Suite 820
Coral Gables, FL 33134
305-570-1610
Fax : 305-570-1599
Email: hbell@brresq.com

9