UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

              Plaintiff,               CASE NOS.  19-cr-20674-GAYLES
                                                          25-cr-20154-GAYLES

v.

BORIS ARENCIBIA,

              Defendants.
_____/

## OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT, REQUEST FOR DOWNWARD DEPARTURE OR VARIANCE, AND SENTENCING MEMORANDUM

The Defendant, **BORIS ARENCIBIA** ("Mr. Arencibia"), by and through his undersigned counsel, and pursuant to *U.S.S.G. §6A1.2-3*, *Rule 32 (d), (e)(2)* and *(f)*, *Fed. R. Crim. P.,* and *18 U.S.C. § 3553(a),* respectfully files his Objections to the Presentence Investigation Report (hereinafter "PSR"), Request for Downward Departure or Variance, and Sentencing Memorandum. In support thereof, Mr. Arencibia states:

### I. INTRODUCTION

The PSR's calculated offense level of 36 (188 to 235 months) is fundamentally flawed and represents an extreme departure from the Parties' negotiated plea agreements. The Parties' Agreements contemplated a total offense level of 23 (in Case No. 19-cr-20674 ("2019 case") and a total offense level of 23, 25, or 27 in Case No. 25-cr-20154 ("2025 case")—a difference of over ten (10) levels. This disparity violates due process, fundamental fairness principles, and the careful negotiations that led to Mr. Arencibia and codefendant Jose Armando Rivera Garcia's ("Mr. Rivera") Plea Agreements in both cases. Mr. Arencibia respectfully requests the Court either honor

1



the negotiated agreements or, alternatively, impose a significant variance under 18 U.S.C. § 3553(a) to achieve a sentence of 53 months in Case No. 19-cr-20674 ("2019 case") and 57 months in Case No. 25-cr-20154 ("2025 case") with the sentences to run concurrently.[1] "A sentence imposed pursuant to a plea agreement must follow the reasonable understandings and expectations of the defendant with respect to the bargained-for sentence." *United States v. Palladino*, 347 F.3d 29, 33 (2d Cir.2003) (internal quotation marks omitted).

Mr. Arencibia was indicted in two related cases, Case No. 19-cr-20674 ("2019 case") and Case No. 25-cr-20154 ("2025 case"). He accepted plea agreements in both cases[2] and is being sentenced on both matters in this proceeding.[3] The Plea Agreements represent the culmination of extensive, good-faith negotiations between the Government attorneys in both cases, and the undersigned counsel and counsel for co-defendant Jose Armando Rivera. Throughout these negotiations, which spanned several months, all parties—including Government supervisors who reviewed and approved the final agreements—carefully weighed the factors enumerated in 18 U.S.C. § 3553(a)(2), including the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. The Government's willingness to recommend these specific sentences, after thorough investigation and consideration of Mr. Arencibia's criminal conduct, personal history, circumstances, and the nature of the offenses, demonstrates prosecutorial recognition that the

---

1 Mr. Arencibia will also request that this Court credit him for the 21 months he has been in custody in any sentence imposed in the 2025 Case per USSG §5G1.3. *See* Mr. Arencibia's argument in section IV.B.2 herein.

2 Both cases were triable cases for the defense and upon information and belief, the Government will concur with this assessment.

3 Mr. Arencibia and Mr. Rivera have saved the Government and the Court the time and expense of two trials and one sentencing hearing by pleading guilty and agreed to one sentencing hearing.



agreed-upon terms are "sufficient, but not greater than necessary" to accomplish the statutory sentencing purposes. Probation's calculation, which exceeds the negotiated terms by more than ten (10) offense levels, fails to account for this collaborative judicial process and the reasoned judgment of experienced prosecutors and defense counsel who are intimately familiar with both the facts of these cases and the appropriate punishment necessary to satisfy the goals of sentencing.

Despite the Parties' plea agreements that calculate Mr. Arencibia's total offense level at 23 (46 to 57 months) in the 2019 case, *see* [2019 Case, DE 1117 at ⁋7]*,* and 23 (46 to 57 months), 25 (57 to 71 months), or 27 (70 to 87 months) in the 2025 case, dependent on whether sophisticated means and/or role enhancement are assessed, *see* [2025 Case DE 24 at ⁋12], the PSR calculates Mr. Arencibia's total offense level at 35 (188-235 months).

Significantly, the Government recognized the distinctions among the various codefendants and coconspirators were a matter of "function, as a division of labor in a partnership." [2019 Case, DE 1105 at p. 5]. Mr. Arencibia's role was to supply the diverted drugs rather than an organizer or manager of the conspiracy and was not continuously involved in the conspiracy. [2019 Case, DE 1105 at p. 3]. "A major part of his involvement was in setting up and supplying products, through other conspirators." [2019 Case, DE 1116 at ⁋7]. The evidence shows he participated with different coconspirators during different time periods [2019 Case, DE 1116 at ¶7], further evidencing his peripheral role rather than any position of leadership or control. Moreover, the Government acknowledged Mr. Arencibia's limitations that precluded any leadership role: "Arencibia spoke little English and had limited skill in the white-collar aspects of business such as setting up and operating a corporation, preparing invoices and offer sheets." [2019 Case, DE 1105 at pp. 3-4].



## II. <u>BACKGROUND</u>

Mr. Arencibia was arrested on January 26, 2024, in Case No. 19-cr-20674 [2025 Case, DE 36 at p. 2] and has remained incarcerated since. An information was subsequently filed in Case No. 25-cr-20154, charging Mr. Arencibia as part of a conspiracy for essentially the same criminal conduct. [DE While the cases bear different docket numbers and involve different time periods, the evidence establishes they are part of a single, continuous conspiracy involving the diversion of prescription drugs and related money laundering activities. Both cases involve the same essential criminal scheme—the diversion of prescription drugs within the United States, including Puerto Rico, Arizona, and Florida. *Compare* 2019 Case, DE 1116 at ¶3 *and* 2025 Case, DE 23 at p. 1. The conspiracy employed the same modus operandi, involved overlapping coconspirators, and pursued identical objectives across both time periods. The Government itself has characterized these as extensions of the same underlying conspiracy, with the 2025 case representing a continuation of the criminal activity that began in 2013.  Mr. Arencibia "was involved with different co-conspirators during different time periods. *See PSR at ¶148.*

<u>**Case No. 19-cr-20674**</u> encompasses conspiracy activity from approximately 2013 through May 29, 2019, [2019 Case, DE 927; DE 1116], and involved approximately twenty (20) conspirators, many who were indicted as early as 2019 and whose cases have been resolved. [2019 Case, DE 927]; *PSR at pp. 2-5.*[4] Mr. Arencibia pleaded guilty to Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) (Count 3). [2019 Case, DE 1117].

Based upon the plea agreement entered with the Government, Mr. Arencibia's total offense level pursuant to the Federal Sentencing Guidelines (USSG) is 23 with a guidelines range of 46 to

---

[4] For the Court's convenience, attached as ***Exhibit A*** is a chart with the codefendants and coconspirators' sentences in both cases.



57 months.  [2019 Case, DE 1117 at ₱ 7]. The parties agreed that no adjustments for sophisticated

laundering, obstruction, or role adjustment are warranted.  *Id.* at ₱8.[5] The Parties further agreed to

recommend that the sentences in the 2019 and the 2025 case run concurrently. [2019 Case, DE

1117 at ₱9].

**Case No. 25-cr-20154**  involves the continuation of the conspiracy from March 2022 and

continuing through December 2023 [2025 Case, DE 1], and involves a codefendant, Mr. Rivera,

at least three (3) coconspirators, and several unindicted coconspirators. [2025 Case, DE 1].   Mr.

Arencibia pleaded guilty to Conspiracy to Traffic in Medical Products with False Documentation

in violation of 18 U.S.C. §670(a)(2) (Count 1). [2025 Case, DE 24]. Codefendant, Mr. Rivera, will

be sentenced with Mr. Arencibia.  It should be noted that none of the medical products were

"tampered" with in any way. What was falsified was the documentation of the pharmaceuticals to

make it look like the products were being sold by licensed wholesalers.  It is also important to note

that Mr. Arencibia was *not* involved in the day-to-day operations of Eclipse, the company involved

in selling the medical products.  Mr. Arencibia's role was buying the pharmaceuticals and

providing them to the company.  The company, through the other coconspirators, created the

falsified documentation for the medical products.  Mr. Arencibia was aware of the fact that the

documentation was being falsified.

Mr. Arencibia's total offense level ranges from 23 (46-57 months), 25 (57-71 months), or

27 (70-87 months) under the plea agreement, depending on whether a two (2)-level enhancement

---

5 The PSR acknowledges "the defendants in this conspiracy were not involved in sophisticated
laundering nor was sophisticated means involved in this case and the two-level adjustments . . .
were not imposed." PSR at ₱151.



for sophisticated means and/or a two (2)-level enhancement for Mr. Arencibia's role in the conspiracy applied. [2025 Case, DE 24 at ⁋ 12].

**The PSR Guidelines Calculations**   The PSR recommended total offense level is over ten (10) levels above the total offense levels anticipated by the Parties. In part because probation grouped[6] the cases under §3D1.1(d), which resulted in an artificially inflated loss amount, and in part because of Probation's recommended enhancements.

- *Base Level*   To start, while the Government in both cases started at a base offense level 6. The PSR assessed a base level 7. Resulting in **+1** level greater than the Parties agreed upon.

- *Specific Offense Characteristic*   Grouping the cases here overinflated Mr. Arencibia's loss amount.  The aggregate loss amount caused an increase from $7.3 million in the 2019 case and $21,540,489 in the 2025 case, to an aggregate of $28,840,489, *PSR at ⁋230,* resulting in an increase of **+4** levels to the 2019 case and **+2** levels to the 2025 case.[7]

- *Employee/Agent of an organization in the supply chain for the pre-retail medical product*

     Probation also assessed four additional levels under USSG 2B1.1(b)(8), claiming, despite there being no evidence to support such a finding, that Mr. Arencibia was employed by or was an agent of an organization in the supply chain for the pre-retail medical product. *PSR at ⁋ 230.* Although Mr. Arencibia supplied diverted drugs *to* such companies, he did not participate in the operations of any of those they supplied the drugs to nor was he employed *by*

---

6 As more fully developed in section III, at pp. 11-14, Probation erroneously grouped the money laundering and fraud Counts here.

7 Alternatively, as more fully developed below, if the loss amount for purposes of the sentencing calculations was assessed at $7.2 million, at between $3.5 million but not more than $9.5 million, as it was for the other coconspirators in the 2025 case, the aggregate loss amount would be $14.5 million, which includes the $7.3 million in the 2019 case and $7.2 million in the 2025 case, Mr. Arencibia's offense level will be increased by 20 levels, not the 22 recommended in the PSR.



QUINTERO BROCHE & FONSECA-NADER P.A.

75 Valencia Avenue • Suite 909 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

any of them.  As the Government and the Defense agree, Mr. Arencibia should receive a two-level increase under USSG §2 B1.1(b)(8) instead of the four-level increase in the PSI. *See 2025 Case Plea Agreement, DE 24 at ¶12(c).* Thus, the PSR assessed an additional +**2** levels against Mr. Arencibia above what is proper and what the Parties, who know the facts of the case, agreed to in the plea agreements.

- *Sophisticated Means*  The PSR assessed an additional +**2** levels on the grounds that the offense involved sophisticated means. As more fully developed in section III, at pp. 15-16, Mr. Arencibia's conduct in the offense did not involve sophisticated means. The Government in the 2019 Case agrees with the Defense the Mr. Arencibia's conduct and the criminal conduct in the entire case does not rise to a level where an enhancement for sophisticated means would be appropriate.

- *Role Enhancement*  The PSR also assessed an additional +**2** levels for Mr. Arencibia's role in the conspiracy without any factual support that Mr. Arencibia was in fact a manager, leader, or organizer, i.e. that Mr. Arencibia exercised control over any coconspirator, or anyone, in the case.  As more thoroughly discussed in section III, at pp. 16-18, the conconspirators were all partners, performing the necessary aspects of their role to ensure the success of the business. Mr. Arencibia was neither a manager, leader, nor organizer.

- *Zero Point Offender*  If Mr. Arencibia is not assessed an aggravating role, Mr. Arencibia qualifies for a two (2) level decrease as a zero-point offender.

As detailed above, the PSR's calculations results in an excessive sentence that is far above what the Parties negotiated and what should be a "reasonable but not greater than necessary sentence." The defendant and the government reached agreements that result in a calculation eleven (11) levels



below those recommended in the PSR.  In fact, if one were to subtract the excess enhancements levels identified above, a total of 11 levels, Mr. Arencibia would be at a total offense level of 25, well-within the Parties' calculations in the agreements. This stark disparity demonstrates that the PSR fundamentally deviates from the facts of the case and the carefully negotiated terms between the parties. Accordingly, Mr. Arencibia asks this Court to enter a sentence in line with the facts of the case and the agreements reached between Mr. Arencibia and both Government prosecutors in these cases or grant a downward variance to achieve the Parties' agreements.

### III. OBJECTIONS TO PSI REPORT

*Page 2*: Mohammad Mehdi Salemi 9/18/2025: Sentence reduced to 53 months imprisonment to run concurrent, 3 years supervised release.  *Case No. 19-cr-20674-DPG* [2019 Case, DE 1149].

*Page 5-Related Cases to Case No. 25-cr-20154, not included in the PSR*:

- *United States v. Orel Valdespino Fernandez,* Case No. 24-cr-20045-Altman.  Defendant, straw owner of Eclipse, plead to one count of money laundering and was sentenced to 33 months imprisonment, 3 years supervised release as to Count 1.

- *United States v. Alex Oria,* Case No. 24-cr-20108-Moore. Defendant plead guilty to conspiracy to introduce into interstate commerce misbranded drugs and to defraud the United States in violation of 18 U.S.C. §371 (Count 1).  DE 76.  The Plea Agreement assessed a loss amount of between $3.5 million but not more than $9.5 million, increasing the offense level by 18, and an agreed total offense level  23.  *Id. at ¶12.* Defendant Oria agreed to a forfeiture money judgment in the amount of $7.2 million. *Id. at ¶14.* Sentencing is scheduled for November 20, 2025. DE 80. Defendant's maximum sentence would be 60 months.



- *United States v. Diosdan Gonzalez Alvarado*, Case No. 24-cr-20254-Moore. Defendant plead guilty to conspiracy to introduce misbranded drugs into interstate commerce and defraud the United States. DE 46. The Plea Agreement assessed a loss amount of between $3.5 million but not more than $9.5 million, increasing the offense level by 18, and an agreed total offense level 21.[8] *Id. at ¶ 12.* Sentencing is scheduled for October 2, 2025.  DE 51.

*Paragraph 21(b), at p. 10*: has a minor typo in that the paragraph should read that defendant's offense level shall increase by twenty levels, not two, pursuant to section 2B1.1(b)(1)(K).

*Paragraph 34, at p. 13*: Alex Orias plead guilty to Count 1 of the Indictment, conspiracy to introduce into interstate commerce misbranded drugs and to defraud the United States in violation of 18 U.S.C. § 371.  Sentencing is set for November 20, 2025. *See United States v. Alex Oria,* 24-cr-200108-Moore.

### *The Offense Conduct*

*Paragraphs 44 and 49*: Mr. Arencibia objects to these paragraphs in so far as he never controlled Quality Supplement Distributors (Quality Supplement). Furthermore, Defendant was not involved in the day-to-day operations of Quality Supplement.

*Paragraph 147*: Mr. Arencibia objects to paragraph 147 in so far as he did not set up any of the corporations and accounts, nor did he assist in any way in establishing the means used to transfer the funds.  The Government admitted as much in its response to codefendant Gustavo Linares' sentencing memorandum.  *See* 2019 Case DE 1105 at p. 3 ("Boris Arencibia was the supplier of the diverted

---

8 The difference between Defendant Alvarado's total offense level of 21 and Defendant Oria's total offense level of 23, is that Defendant Oria's plea agreement did not include the two-level credit for zero-point offender.  *Compare DE 46 at ¶12(d) and DE 76 at ¶12.*



drugs that Linares sold. . . . Arencibia . . . had limited skill in the white-collar aspects of business such as setting up and operating a corporation, preparing invoices and offer sheets, etc.").

*Paragraph 179*: Mr. Arencibia was not released on bond. He has remained incarcerated since January 26, 2024, and should receive credit for the time he has been incarcerated in any sentence imposed in both cases.

*Paragraph 182*: Mr. Arencibia objects to paragraph 182 in so far as he was not a beneficial owner or operator of Eclipse Meds LLC, and had no involvement in the day to day operations of Eclipse.

*Paragraph 186*: Mr. Arencibia objects to paragraph 186 in so far as he did not control or operate Eclipse.

*Paragraph 195* Mr. Arencibia objects to paragraph 195 in so far as it states he released on bond. Mr. Arencibia has remained in custody since January 26, 2024. Mr. Arencibia was arrested on January 26, 2024. His initial appearance was held on April 11, 2025, before Magistrate Judge D'Angelo.

*Paragraphs 216/217*: Role Adjustment in Case No. 25-20154. Mr. Arencibia objects to paragraphs 216 and 217 in so far as they suggest that Mr. Rivera and Mr. Arencibia were the owners of Eclipse and directed Valdespino to take payments to bank branch locations to conduct transactions on behalf of Eclipse, and recommends a two-level role enhancement despite the complete absence of any evidence that Mr. Arencibia was a manager or leader of other participants. To the contrary, the PSR describes Mr. Arencibia's conduct and that of his coconspirators as equal, with nothing in the PSR indicating Mr. Arencibia is a leader or organizer. *See PSR ¶¶ 186-195.* Mr. Arencibia does not know Mr. Valdespino and never spoke to him until he met him at FDC-Miami when Mr. Arencibia was arrested.

The other coconspirators in this case are: Diosdan Alvarado, Orel Valdespino, and Alex Oria. All three have also pled guilty to Money Laundering (Orel Valdespino) and Conspiracy to Introduce



into Interstate Commerce Misbranded Drugs and to defraud the United States by impairing/impeding the functions of the FDA (Diosdan Alvardo and Alex Oria). Critically, nothing in their factual proffers suggests they were being controlled by any other coconspirator, let alone, Mr. Arencibia. In fact the factual proffers, like the PSR, describe each coconspirators' independent role in the conspiracy—each working toward the success of the business as equals. *See United States v. Diosdan Gonzalez Alvarado,* 24-cr-20254-KMM, DE 47; *United States v. Orel Valdespino Fernandez,* 24-cr-20045-Altman, DE 48; *United States v. Alex Oria,* 24-cr-20108-KMM, DE 77. The PSR establishes that the coconspirators' relationship was a partnership with each participant contributing equally to the conspiracy's activities, not a hierarchical structure warranting a role enhancement.

<u>*Paragraphs 228 and 229 Grouping in Case No. 25-20154*</u>:

The PSR erroneously groups the fraud and money laundering counts despite the fact the counts do not involve substantially the same harm as defined in guideline §3D1.2. Significantly, if these cases proceeded to separate sentencing hearings on different dates, and not together, grouping (an enhancement here) would not apply—a distinction that underscores the impropriety of combining these offenses merely because they are being sentenced simultaneously.

Grouping is appropriate only when a defendant has been convicted of counts that constitute "Groups of Closely Related Counts." *See* U.S.S.G. §3D1.1. While multiple counts from different indictments or informations may be grouped if sentences are imposed simultaneously or in a consolidated proceeding, *see United States v. Wilson*, 593 F. App'x 942 (11th Cir. 2014), the threshold question remains whether the offenses are sufficiently "closely related" to warrant grouping.

Under U.S.S.G. § 3D1.2, offenses are grouped for sentencing purposes if they involve substantially the same harm. This includes situations where the offenses involve the same victim and the same act or transaction, or where they involve the same victim and are connected by a common

11



criminal objective or scheme. Grouping may also be appropriate when one offense contributes a specific offense characteristic to another or when the offense level is determined based on aggregate harm.

Subsection 3D1.2(d) provides that counts involve the same harm "when the offense level is determined largely on the basis of the total amount of harm or loss, . . . or some other measure of aggregate harm[.]"  This subsection lists guideline sections representing offenses that "are to be grouped," including §2S1.1 (money laundering) and 2B1.1 (theft and fraud). However ***the mere listing of both Guidelines does not automatically necessitate grouping***. *See United States v. Harper,* 972 F.2d 321, 322 (11th Cir. 1992) (holding that automatic grouping can detract from the purpose of section 3D1.2 "to combine offenses involving closely related counts.").

In *United States v. McClendon,* the Eleventh Circuit affirmed the district court's determination that the fraud and money laundering counts should not be grouped together for purposes of sentencing purposes.  195 F.3d 598, 603 (11th Cir. 1999). The Court found that the nature and measure of harm resulting from the two offenses differed because: there were separate victims of the two offenses; the offense level for each count was determined in a different manner under the Guidelines; and the fraud scheme was not dependent upon the money laundering. *Id.* 602; *see also Harper,* 972 F.2d at 322 (holding that money laundering and drug trafficking offenses should not be grouped where they were not of the same general type and the facts did not show the offenses to be closely related).  The Court distinguished *United States v. Mullens,* 65 F.3d 1560 (11th Cir. 1995) where grouping was affirmed because the money contributed by new investors in a Ponzi scheme was "laundered" when paid out to old investors as false profits, making the fraud and money laundering "integral cogs in continuing the scheme." McClendon, 195 F.3d at 602. The critical distinction in Mullens was "the main connection

QUINTERO BROCHE & FONSECA-NADER P.A.

75 Valencia Avenue • Suite 900 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

between the laundered funds and the fraud scheme . . . [was] that the money represented the proceeds of the fraud." *Id.*

Here, as in *McClendon* and *Harper*, the fraud and money laundering counts are not closely related. First, the two conspiracies involved distinctly different victims, i.e., the United States Food and Drug Administration in the 2025 Case, *see PSR at ¶222,* and in the 2019 Case, unidentifiable patients who received drugs that may not have been of full potency, *PSR at ¶22*1, and pharmaceutical manufacturers who had their pill bottles stored in poor conditions thereby affecting the efficacy of the pills. PSR at ¶219. The presence of separate and distinct victims is a dispositive factor militating against grouping. *See McClendon*, 195 F.3d at 602.

Moreover, the nature and measure of harm resulting from each offense differ fundamentally. The money laundering offense under §2S1.1 involves the processing and concealment of illicit funds, with the offense level calculated based on the value of funds laundered while the prescription drug trafficking offense under §2B1.1 involves tangible harm to public health and safety, pharmaceutical supply chain integrity, and potentially compromised medication efficacy, with the offense level calculated based on loss amount or intended loss. These offenses are measured differently under the Guidelines and produce qualitatively different harms—one financial and regulatory, the other involving public health and safety.

Unlike *Mullens*, where the money laundering was essential to perpetuating the fraud scheme, here the prescription drug trafficking conspiracy could have—and did—exist independently of any money laundering activity. The drug trafficking scheme's success did not depend on laundering the proceeds; rather, the money laundering was a separate, subsequent offense involving the disposition of funds after the drug trafficking had already occurred. The "main connection between the laundered funds and the fraud scheme" is merely "that the money represented the proceeds of the fraud"—



precisely the attenuated connection that *McClendon* found insufficient to warrant grouping. 195 F.3d at 602.

It bears emphasizing that grouping here operates as an enhancement, not a reduction. If these cases had proceeded to separate sentencing hearings, Mr. Arencibia would not face this enhancement. The artificial consolidation of sentencing should not result in a harsher penalty for conduct that, by its nature, involves separate harm, separate victims, and independent criminal schemes.

Accordingly, the fraud and money laundering counts are not "closely related" under U.S.S.G. §3D1.2. They involve different victims, produce different types of harm, are calculated under different guideline provisions, and are not integral to one another. Consistent with *McClendon* and *Harper*, the Court should decline to group these offenses and should sentence Mr. Arencibia on each count separately as the Parties anticipated under the plea agreements.

### *Base Offense Level, Adjusted Offense Level, Total Offense Level, & Guideline Provisions: 230, 233, 235, 239, 294, 295, 296*

*Paragraph 230*:

- *Grouping—Loss Amount:* Consistent with Mr. Arencibia's grouping argument above, Mr. Arencibia objects to aggregating the loss amounts for both the 2019 and the 2025 case.

- *Employee or Agent of Pre-Retail Supplier:* Mr. Arencibia objects to the four-level increase under section 2B1.1(b)(8)(B). Defendant was ***not*** employed by (nor was he an agent of) an organization in the supply chain for the pre-retail medical product. The Government agrees that Mr. Arencibia should receive a two (2)-level increase (not four as recommended in the PSR) under §2B1.1(b)(8)(A) because although Mr. Arencibia may have been supplying diverted drugs to pre-retail medical products organizations, he was not an employee or participating in the operation of the companies he supplied the drugs to.



Moreover, both the 2019 case and the 2025 case plea agreements provide for a two-level increase pursuant to §2B1.1(b)(8)(A), not a four-level increase as recommended in the PSR. *Compare DE 24 ¶12(c) and PSR at ¶230.*

- *Sophisticated Means*: Pursuant to U.S.S.G. §2B1.1(b)(10)(C), if "the offense otherwise involved sophisticated means *and* the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels." "Sophisticated means" is defined as "***especially*** complex or ***especially*** intricate offense conduct pertaining to the execution or concealment of an offense." *U.S.S.G. §2B1.1(n.9(B))* (*emphasis added*). Sophisticated means applies only to the *defendant's individual conduct* in the offense and not the overall scheme; this section centers on the defendant's actual conduct rather than on the conduct of all individuals involved in the conspiracy. *United States v. Presendieu*, 880 F. 3d 1228, 1248 (11th Cir. 2018) (The reason for the 2015 amendment was to narrow the focus and scope of the enhancement to the sophistication of the defendant's personal conduct, not the scheme as a whole). Therefore, a sophisticated means enhancement is only applicable if the offense otherwise involved sophisticated means *and* the Defendant "intentionally engaged in or caused" the conduct constituting sophisticated means. *Id.*

There is nothing on the record to indicate that Mr. Arencibia personally involved himself or directed anyone to engage in any conduct that is especially complex or especially intricate to either execute this offense or to attempt to conceal it. There is no evidence Mr. Arencibia did anything other than supply the diverted prescription drugs at varying times during the conspiracies. Notably, the Government noted as much. *Cf. United States v. Gaye,* 902 F. 3d 780, 791 (8th Cir. 2018) (affirming sophisticated means increase against the organizer of a conspiracy that lasted over eight years, involved over 500

15

participants and 1500 transactions.  The Court found that the scheme required recruiting others to avoid detections, coordinating and planning, and a vast network of coconspirators). The Defendant's conduct here does not contain the level of sophistication courts routinely find to qualify as "sophisticated."

Mr. Arencibia did nothing more than supply the prescription drugs.  Since Mr. Arencibia's offense did not involve sophisticated means, the two (2) level enhancement in paragraph 230 is not warranted and Mr. Arencibia's objection thereto should be sustained.

*Paragraph 233 Role Enhancement*:  Mr. Arencibia objects to Paragraph 233 of the PSR, insofar as it states that Mr. Arencibia was an organizer, leader, manager, or supervisor. At best, the PSR establishes that Mr. Arencibia and his coconspirators were partners. Every paragraph discussing Mr. Arencibia's involvement in the conspiracy, reiterates that he and his coconspirators were partners, "each equally involved in the activities required for the business to succeed." *See* 2019 Case DE 1105 at p. 4.

Under § 3B1.1, a defendant is subject to an increased offense level based on his or her role in the offense. "[T]he primary goal in applying § 3B1.1 should be to make a 'commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy.'" *House*, 883 F.3d at 724 (*quoting United States v. Dade*, 787 F.3d 1165, 1167 (7th Cir. 2015)). A defendant's offense level is increased by two levels if he or she "was an organizer, leader, manager, or supervisor in any criminal activity" not otherwise described in the section. U.S.S.G. § 3B1.1(c). Typically, this means that "the defendant 'had some real and direct influence' on other participants in the criminal activity." *United States v. Mankiewicz*, 122 F.3d 399, 405 (7th Cir. 1997) (quoting *United States v. Mustread*, 42 F.3d 1097, 1103 (7th Cir. 1994))." *United States v. McGee*, 985 F.3d 559, 562 (7th Cir. 2021).



Indeed, federal courts have had many occasions to determine whether a defendant was ripe for enhancement pursuant to § 3B1.1(a). *See, e.g., Dade*, 787 F.3d 1165, *Mankiewicz*, 122 F.3d 399, *Mustread*, 42 F.3d 1097, *McGee*, 985 F.3d 559, *Brown*, 944 F.2d 1377, and *United States v. Medina*, 167 F.3d 77 (1st Cir. 1999). The Government must prove by a preponderance of the evidence that a defendant qualifies for a § 3B1.1(a) enhancement. *Medina* at 79, *citing United States v. Voccola*, 99 F.3d 37, 44 (1st Cir. 1996). A fact-specific review of the evidence in this case reveals that Mr. Arencibia was far from a manager. He was, in fact, a simple supplier within the conspiracy. Every single paragraph in the PSR describing the offense conduct discusses the actions of the coconspirators working together—without any mention of one controlling anyone or leading anyone. *See* PSR at ¶¶ 186-195. Even codefendant, Lazaro Hernandez, who has been cooperating with the Government since 2022, told the Government that although he, Gilbert Hernandez, Mr. Arencibia, and Mr. Rivera agreed to purchase Eclipse and be equal partners, Mr. Arencibia had no direct involvement with the day-to-day operations of Eclipse.

A role enhancement is not proper where there is no evidence that Mr. Arencibia managed, supervised or otherwise organized any participant in the conspiracy. *See United States v. Glinton,* 154 F.3d 1245 (11th Cir. 1998) (fact that defendant purchased more cocaine from the supplier than any other defendant did not support managerial enhancement); *United States v. Beasley,* 2 F.3d 1551 (11th Cir. 1993) (enhancement not supported by the evidence where defendant was only shown to be a drug purchaser and seller, not an organizer); *United States v. Lozano-Hernandez,* 89 F.3d 785 (11th Cir. 1996).

The court has stressed that an enhancement for one's role in the offense requires a showing that a defendant managed people, not assets. *United States v. Glover,* 179 F.3d 1300 (11th Cir. 1999); *United States v. Harness,* 180 F.3d 1232 (11th Cir. 1999); *United States v. Martinez,* 584



F.3d 1022 (11th Cir. 2009) (reversing four-level adjustment finding that an admission by the defendant that he "orchestrated" drug shipments did not necessarily mean he controlled, supervised, or managed people in the endeavor.  Moreover, the fact that defendant made arrangements for the delivery and sale of drugs between the buyer and seller is not enough to demonstrate a leadership role). In *United States v. Yates,* 990 F.2d 1179 (11th Cir. 1993) and *United States v. Maxwell,* 34 F.3d 1006 (11th Cir. 1994), the court held that the existence of a buyer/seller relationship was not sufficient to justify an enhancement under USSG §3B1.1.

*Zero Point Offender*:  Mr. Arencibia objects to the failure to include credit for zero-point offender.

*Paragraph 262*:  Mr. Arencibia's daughter, Graciela Arencibia, is not a lawyer as presented in paragraph 262.  She is a student at FIU and hopes to study law.

*Paragraph 263*:  Mr. Arencibia's daughter, Isabela Hernandez, is not a lawyer.  She studies business administration in Hawaii.

*Paragraph 267*:

- Mr. Arencibia was not in Florida at the age of 10 and never underwent hernia surgery at Marathon Hospital in Marathon, Florida.

- Contrary to the statements in paragraph 267 that Mr. Arencibia had no existing medical conditions and was not taking prescription medications, Mr. Arencibia has several medical issues and takes prescription medication:

  o Mr. Arencibia has a spot on one of his lungs that requires monitoring.

  o He has three cardiac stents.

  o Mr. Arencibia is prediabetic.

  o Recent bloodwork raised concerns about Mr. Arencibia's prostate.  A CT scan has been completed, but Mr. Arencibia has not received the results.



    o   Mr. Arencibia takes the following medications:

        ▪  Metropolol 25 mg
        ▪  Atorvastatin 50 mg
        ▪  Metformin 500 mg
        ▪  Asprin 81 mg

*Paragraph 274*:  Mr. Arencibia was never part of a baseball team in Cuba in 1990.  He was a member of the Cuban National Judo Team when he defected in 1995.  .

*Paragraph 276*:  The entire paragraph is incorrect.  Mr. Arencibia did not graduate from Marathon Middle School and does not have an electronic technician certification.  Mr. Arencibia defected from Cuba as an adult in 1995 while competing with the Cuban National Judo Team.

*Paragraph 284*:

- **Residence** The Residence identified in the Assets section in paragraph 284 was purchased *from* MRBL Group LLC in March 2019 and is titled to RBA Holding Group.  Sandra Santana is the sole Authorized Member of RBA Holding, LLC. Mr. Arencibia has no legal interest whatsoever in this residence.  An LLC is a separate legal entity that holds property separate from its members. As such, the residence is not a marital asset of which Mr. Arencibia has any interest.[9]

*Paragraph 285*:

Mr. Arencibia objects to paragraph 285 insofar as it suggests Mr. Arencibia has any legal interest in the property or that the property is marital property.  Under Florida law, LLCs are distinct legal entities that hold property separate from their members. *See Cramer v. Palm Ave. Partners, LLC,* 2025 WL 1222269 (M.D. Fla. Apr. 28, 2025).  Even when a spouse is the sole member of an LLC, the

---

9 All corporate, title, and mortgage documents were provided to the Probation Officer by the undersigned so that the Probation Officer could verify that Mr. Arencibia has never been an officer, shareholder, member to the corporation, and otherwise has no interest in this property.



other spouse does not acquire an interest in the LLC's property by virtue of the marital relationship. Members of an LLC do not have an interest in specific LLC property, as stated in Florida Statutes § 605.0110(4): "A member of a limited liability company has no interest in any specific limited liability company property" §  605.0110 (4), Fla. Stat.  An LLC member's spouse does not have a legal interest in property owned by the LLC. LLC property is treated as separate from the personal property of its members, and members do not have an interest in specific LLC property. For example, in equitable distribution proceedings, courts cannot award LLC property to a spouse unless the LLC is made a party to the action. Similarly, in criminal forfeiture proceedings, LLC property is not subject to forfeiture unless specific statutory conditions are met.

Florida courts consistently recognize this bright-line rule protecting LLC property from claims by non-member spouses. In *Ehman v. Ehman*, the court ruled that the trial court could not award the wife real properties owned by an LLC as part of equitable distribution because the LLC was not a party to the dissolution proceedings. 156 So. 3d 7, 8 (Fla. 2d DCA 2014); *Feldman v. Feldman,* 390 So. 2d 1231 (Fla. 3d DCA 1980) (court does not have authority to order the transfer of assets of a corporation not a party to the litigation). Similarly, in *Maddox v. Maddox*, the court found that the due process rights of an LLC were violated when the trial court awarded the wife an interest in intellectual property owned by the LLC without the LLC being made a party to the action. *Maddox v. Maddox*, 357 So. 3d 270 (Fla. 2d DCA 2023). Most recently, in *Ezeamama v. Estate of Chibugo*, the court held that real property owned by a single-member LLC was not an estate asset, emphasizing that the LLC is a separate legal entity and its property cannot be administered as part of the decedent's estate.  390 So. 3d 189 (Fla. 3d DCA 2024).

The residence identified in paragraph 285 is thus not subject to forfeiture.



QUINTERO BROCHE & FONSECA-NADER P.A.

75 Valencia Avenue • Suite 909 • Coral Gables, Florida 33134
Tel: (305) 448-4363 • Fax: (305) 448-4363

_Paragraph 306_:  Factors that warrant departure and/or variance will be developed below. It should be noted that Probation failed to advise the court as a factor that warrants a variance or departure that had these cases gone to sentencing on separate dates there would be no grouping.

_Paragraph 325/326_:  Mr. Arencibia objects to paragraphs 325 and 326 in so far as they would require him to surrender to U.S. Immigration and Customs Enforcement for removal proceedings upon his release, during which time he would simultaneously be subject to the supervised release portion of his sentence.

## IV. <u>SENTENCING MEMORANDUM</u>

In _Booker_, the Supreme Court held that the Sentencing Guidelines are no longer mandatory and constitute only one of the sentencing factors that the Court must consider under 18 U.S.C. §3553(a); _United States v. Booker,_ 125 S.Ct. 738, 757 (2005). Under _Booker,_ sentencing decisions are subject to a "reasonableness" standard of review which must be measured against the factors outlined by Congress in §3553(a). _Booker,_ 125 S.Ct. at 761. A sentence outside the advisory guideline range does not need to be justified by "extraordinary circumstances." _Gall v. United States,_ 128 S. Ct. 586 (2007). Indeed, the Supreme Court has specifically rejected any presumption of unreasonableness for sentences outside the guideline range. _Gall,_ 128 S. Ct. at 595.

In fashioning a sentence that is substantially reasonable, the district court has considerable discretion as to the weight it decides to give to each of the 3553(a) factors. _See United States v. McBride,_ 511 F.3d 1293, 1297-98 (11th Cir. 2008) (noting that disagreement with how the sentencing court weighs certain factors is insufficient to reverse a procedurally reasonable sentence).   In order to impose a sentence that is procedurally reasonable, the district court must correctly calculate the advisory guideline level, treat the guidelines as advisory and not mandatory, consider all of the statutory factors contained in 18 U.S.C. § 3553(a), make correct factual findings

and provide an adequate explanation for the sentence imposed. *Gall,* 128 S. Ct. at 597. The Eleventh Circuit has advised that "*after it makes [its] guideline calculation, the District Court may impose a more severe or more lenient sentence as long as the sentence is reasonable.*" *See United States v. Crawford,* 407 F.3d 1174 at 1179 (11th Cir. 2005) (emphasis added); *See also United States v. Williams,* 456 F.3d 1353, 1363(11th Cir. 2006). The sentence imposed must be "sufficient but not greater than necessary" to achieve the four purposes of sentencing outlined in §3553(a)(2). *See United States v. Adelson*, 441 F.Supp.2d 506 (SDNY 2006) (finding the mechanical application of the advisory sentencing guidelines in a fraud case where losses totaled $260 million would produce a sentence far greater than necessary for punishment under §3553(a)).

The Court must consider Mr. Arencibia's individual history, family circumstances, and overall conduct to determine an appropriate sentence. Together with other evidence as to Mr. Arencibia's character and individual conduct, a sentence at the low end of the guidelines set forth herein is warranted, given the statutory factors set forth in 18 U.S.C. §3553(a). As set out below, *each* of the applicable sentencing factors set forth in 18 U.S.C. §3553(a) amply justify such a sentence.

In the Eleventh Circuit, a guideline sentence is not presumptively reasonable. *See United States v. Campbell*, 491 F.3d 1306, 1313 (11th Cir. 2007); *United States v. Talley*, 431 F.3d 784 (11th Cir. 2005). Instead, district courts must determine on a case-by-case basis the weight to be given the guidelines, so long as that determination is made with reference to the remaining *§3553(a)* factors. *See United States v. Hunt*, 459 F.3d 1180, 1185 (11th. Cir. 2006) ("[t]here are . . . many instances where the Guideline range will not yield a reasonable sentence").[10] Now that

---

10 In application, the Eleventh Circuit has affirmed numerous below guideline sentences since *Booker* even without cooperation. *See, e.g., United States v. Montgomery*, Case No. 05-13935 (11th



the guidelines are advisory only, they are simply "one sentencing factor among many." *United States v. Reinhart*, 442 F.3d 857, 864 (5th Cir. 2006); *United States v. Duhon*, 440 F.3d 711, 715-16 (5th Cir. 2006). Accordingly, the Court has full discretion to sentence below the advisory guideline range without a motion for downward departure as long as the resulting sentence is reasonable. *Williams*, 456 F.3d at 1363.

Here, the strict application of the advisory sentencing guidelines produces a sentence far greater than necessary for punishment under *§ 3553(a)*. Taking into account the *18 U.S.C. § 3553(a)* factors, Mr. Arencibia warrants a sentence well below the guideline sentence he would receive if the Court simply followed the advisory guideline range set forth in Mr. Arencibia's PSR. As set out below, *each* of the applicable sentencing factors set forth in *18 U.S.C. § 3553(a)* amply justify a reasonable departure/variance from the advisory guideline sentence.

In *United States v. Williams,* 435 F.3d 1350 (11th Cir. 2006) the Eleventh Circuit upheld the district court's 90-month sentence, which was less than half of the lowest sentence within the advisory Guidelines range of 188 to 235 months, where the district court correctly calculated the Guidelines range, weighed statutory factors, and gave specific, valid reasons for sentencing lower than this advisory range. In *Williams*, the defendant was designated a career offender due to a felony possession of cocaine with intent to sell or deliver, and a felony carrying a concealed firearm. *Id.* at 1352. Furthermore, the defendant's criminal history category, prior to the career

---

Cir. February 7, 2006) (8 month sentence for bank fraud)(unpublished); *See also United States v. Gray*, 2006 WL 1752372 (11th Cir. June 28th, 2006) (affirming 72 month sentence even though low end of guidelines was 151 months); *United States v. Halsema*, 2006 WL 1229005 (11th Cir. May 9th, 2006) (unpublished) (affirming 24 months sentence even though guidelines were 57-71 months and even though grounds for variance would not have supported departure); *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006) (90 months imprisonment was sufficient, but not greater than necessary to punish, deter and rehabilitate defendant even though low end of guidelines was 188 months).



offender enhancement, was V. *Id.* After the career offender enhancement, the defendant in *Williams* was subject to a level VI criminal history category.

In departing downward from a guideline range of 188 to 235 months imprisonment, the court stated:

> I think, in light of <u>*Booker*</u>,…the Court is still required-and I give considerable deference and weight to the [G]uidelines because a great deal of thought and research and time has gone into developing them, and I think it's a worthy goal to try to obtain some degree of consistency throughout the country. On the other hand, there are occasions when the [G]uidelines simply produce an unjust result; and, in my view…188 months in prison for selling $350 worth of cocaine is akin to the life sentence for the guy that stole a loaf of bread in California. To me, that…does not promote respect for the law and is way out of proportion to the seriousness of the offense and to [Williams'] prior criminal conduct…The court also found a criminal history category of V sufficiently accounted for Williams' previous crimes. The court stated in this instance, 'the **[G]uidelines…do not produce a just and reasonable result.**' It found the difference between sentences within the Guidelines range with the enhancement and without the enhancement **was too disparate to ignore**. Specifically, a base offense level of 23 (26 minus 3 points for acceptance of responsibility) with a criminal history category of V resulted in a Guidelines range of 84 to 105 months' imprisonment without the enhancement, while a base offense level of 31 (34 minus 3 points for acceptance of responsibility) with a criminal history category of VI resulted in a Guidelines range of 188 to 235 months' imprisonment with the enhancement….[the court] could not "in good conscience" sentence Williams to 188 months' imprisonment because it was unreasonable.

*Id. at 1352-53 (emphasis added).*

Here, a departure, as in *Williams*, would be reasonable under the *§3553* factors, as set forth in detail herein. Specifically, a sentence below the guidelines range to a sentence of 53 months or 57 months to run concurrently, would result in a sentence that is "sufficient, but not greater than necessary" and consistent with the negotiated pleas. *See Williams,* 435 F.3d at 1355*; See also United States v. Winingear,* 422 F.3d 1241, 1246 (11th Cir. 2005)(holding a sentence 1/10 the length of the 20-year statutory maximum sentence was reasonable).;



Based on the PSR calculations of 36 and the Parties' agreed offense level, Defendant submits that a sentence of 53 months in Case No. 19-cr-20674-DPG and 57 months in Case No. 25-cr-20154-DPG with a small downward departure/variance for the time he has spent in custody and will later spend in ICE custody[11] is "sufficient but not greater than necessary" for punishment under *18 U.S.C. §3553(a)*.

## A. ANALYSIS OF 18 U.S.C. § 3553(A) FACTORS

### FACTOR 1: NATURE OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT

**1.      Nature of the Offense**

Mr. Arencibia pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h) (2019 Case) and conspiracy to traffic in pre-retail medical products with false documentation in violation of 18 U.S.C. §670(a)(2) & (3) (2025 Case).  The loss amount for purposes of the calculation of the sentencing guidelines was $7.3 million in the 2019 case and $21,540,489 in the 2025 case.  Notably, the other coconspirators in the 2025 case were assessed a loss amount of $7.2 million.  *See Plea Agreements in United States v. Orel Valdespino Fernandez,* Case No. 24-cr-20045 [DE 49 at ⁋ 10b]*; United States v. Alex Oria,* Case No. 24-cr-20108 [DE 76 at ⁋ 10b]; *United States v. Diosdan Gonzalez Alvarado,* Case No. 24-cr-20254 [DE at ⁋10b].

Mr. Arencibia was intermittently involved in the conspiracy across different time periods. Moreover, he was a supplier of the prescription drugs and was not involved in the day-to-day operations of any of the companies in the indicted cases.  Mr. Arencibia was not involved in money laundering activities—although he did have knowledge of them and profited from them.  As such,

---

[11] Mr. Arencibia will be requesting a small downward departure/variance for the additional incarceration time he will spending in ICE custody awaiting deportation.



while accepting that Mr. Arencibia plead to the loss amount in the 2025 case, Mr. Arencibia asks the Court to consider his role as described in the PSR in comparison to the other coconspirators and the effect aggregating the loss amount in both cases has on his sentence.  In other words, the loss amount, i.e., $21 million, overrepresents Mr. Arencibia's conduct in causing the loss.

**2.      History and Characteristics of the Defendant**.

Mr. Arencibia does not speak English and, by the Government's own observations, is a man with limited skill in the white-collar aspects of business, [2019 Case, DE 1105 at pp. 3-4], who, in an effort to atone for his illegal conduct herein, timely accepted responsibility for his involvement in the 2019 and 2025 cases.

Mr. Arencibia is a father to five children and has been married to his wife for over twelve years.  He has two minor children from his current marriage, *PSR at ⁋261, and has an adult son and two adult daughters from previous relationships.  PSR at ⁋⁋ 262, 263.* Additionally, Mr. Arencibia suffers from various medical conditions, including cardiac and lung conditions, that require medical care and for which he takes medication.  *PSR at ⁋267.*

Mr. Arencibia also suffers from substance abuse and addiction, resulting from years of alcohol and prescription drug abuse. *PSR at ⁋⁋ 269-273.*

**FACTOR 2: THE PURPOSES OF SENTENCING - (REHABILITATION, SPECIFIC DETERRENT, GENERAL DETERRENT, AND RETRIBUTION)**

**1.      REHABILITATION:**

A sentence of incarceration between 188 and 235 months is far from necessary for Mr. Arencibia's rehabilitation and would severely overstate Mr. Arencibia's conduct and serve absolutely no rehabilitative purpose. In fact, as this Court is well aware, there are few rehabilitation programs within the Federal Bureau of Prisons.  A departure/variance from the PSR recommended



guidelines and a low-end sentence is sufficient, but not greater than necessary, for Mr. Arencibia's rehabilitation. Mr. Arencibia's timely acceptance of responsibility, and remorse for his actions attest to his beginning his rehabilitation. Mr. Arencibia has demonstrated a desire to take responsibility for his actions and poor judgment. Additionally, Mr. Arencibia has demonstrated an interest in using his time of incarceration productively to focus on improving himself, so he does not repeat the mistakes he has made in the past.

**2. SPECIFIC DETERRENCE:**

A lengthy term of imprisonment is not necessary to protect society from Mr. Arencibia. Respect for the law arises from sentences that are neither too lenient nor too harsh. Mr. Arencibia engaged in a conspiracy to commit money laundering (Case No. 19-cr-20774) and a conspiracy to traffic in pretrial medical products with false documentation (Case No. 25-cr-20154). A sentence as agreed to by the Parties is consistent with the need to reflect the seriousness of this conspiracy, the need to promote respect for the law, and the need to provide a just punishment for Mr. Arencibia.

**3. GENERAL DETERRENCE:**

"General Deterrence" aims to deter *others* from committing crimes. While there is no question the instant offense is a serious crime, sentencing Mr. Arencibia to a lengthy prison term is not necessary for purposes of general deterrence. Mr. Arencibia is not a high-profile defendant who lived a lavish lifestyle based on criminal activity whom the public is likely to see as being treated leniently unless he goes to prison for a lengthy period of time. On the contrary, his forthright remorse, and acceptance of responsibility offer an example to the public of the importance of timely accepting responsibility for one's wrongdoing. By rewarding Mr. Arencibia appropriately for his willingness to admit his illegal conduct, pleading guilty and accepting responsibility for his



actions, the Court effectively sends a message to others who may be involved in criminal behavior that prompt acceptance of responsibility offers the opportunity to make up for prior wrongdoings. Such a message has at least as much value for general deterrence purposes as sending Mr. Arencibia to prison for a lengthy period.

### 4.   RETRIBUTION (JUST PUNISHMENT):

While retribution is an important statutory factor under §3553(a), the overriding command of the law is for the Court to achieve a sentence that is "sufficient but not greater than necessary." *See United States v. Adelson*, 441 F. Supp. 2d 506, 515 (SDNY 2006) ("We are aware of no empirical evidence or studies indicating that a long prison sentence is necessary to achieve the retributive and general deterrence objectives applicable to a case like this one"). A sentence of 188 to 235 months imprisonment, as recommended by probation, would be greater than necessary and go well beyond the ideal of "just punishment," as well as rigorously overstate Mr. Arencibia's conduct herein.

### FACTOR 3: THE KINDS OF SENTENCES AVAILABLE

Title 18 U.S.C. §3553(a) expressly dictates that "[t]he Court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in ¶ (2) of this subsection" (*emphasis added*). As Judge Rakoff pointed out in *Adelson,* the operative word in this congressional mandate, is "necessary." 441 F. Supp. 2d at 515. Mr. Arencibia requests a sentence of imprisonment consistent with the Parties' plea agreements. Based on the relevant sentencing factors present in Mr. Arencibia's circumstances, and detailed herein, it is clear that the sentences calculated by the Government and the Defendant would be sufficient but not greater than necessary for punishment under 18 U.S.C. §3553(a).  Specifically, Mr. Arencibia is requesting the Court to depart downward to a sentence of 57 as originally intended by the Parties in the plea agreements.



**FACTORS 4-5: THE ADVISORY SENTENCING GUIDELINES AND POLICY STATEMENTS**

The PSR finds Mr. Arencibia's total offense at level 36, with a criminal history category I, resulting in a sentencing range of 188-235 months. This is the advisory guideline range resulting from the PSR, however, Mr. Arencibia requests a recalculation based on his objections herein.

**FACTOR 6: AVOIDING DISPARITY WITH SIMILAR OFFENDERS**

A sentence consistent with the Parties' agreement avoids unwarranted sentencing disparities. Subsection 3553(a)(6) directs the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Mr. Arencibia's calculated range of 188-235 months is grossly disproportionate to his actual role and the co-defendant and coconspirators' sentences. *See Chart at **Exhibit A***. For example, in the 2019 case,

- Stephen Costa, who was the "originator," received a sentence of 168 months despite being the conspiracy's architect.

- Mohammad Salemi received 103 months, which has been reduced to 70 months and then 68 months, despite $78 million in sales.

- Lazaro Hernandez received 168 months for $78 million conspiracy.

- Most of the other codefendants received between 24 and 51 months.

Only one coconspirator has been sentenced in the 2025 case, Orel Valdespino, who was sentenced to 33 months. However, Alex Oria, who is scheduled to be sentenced in November, is facing a maximum of 60 months incarceration.



Importantly, this factor is not limited to co-defendants, and the Eleventh Circuit has looked to other cases in deciding how this factor applies. *See United States v. Puch,* 515 F.3d 1179, 1203 (11th Cir. 2008). In *United States v. Riley,* 655 F. Supp. 2d 1298, 1305 (S.D. Fla. 2009), the Court specifically noted that numerous courts have imposed sentences that were substantially less than the recommended Guidelines range for this offense," in varying downward from the guidelines. *See also United States v. Irey,* 746 F. Supp. 2d 1232, 1243 (M.D. Fla. 2010) (noting that "Judges within the Eleventh Circuit . . . impos[ed] below-Guideline sentences 44.2 percent of the time and var[ied] downward by an average of 35.2 percent" between 2007 and 2009).

Multiple sources of data confirm the necessity of a variance to avoid unwarranted sentencing disparities. According to the JSIN platform, a sentencing resource for the Federal Judiciary, which provides sentencing data for the last five fiscal years (FY2020-2024), considers the following as it relates to the various sentencing options available here.

- Of 154 defendants whose primary guideline was §2S1.1, with a Final Offense Level of 23 and a Criminal History Category of I, the average length of imprisonment imposed was 32 months and the median length of imprisonment imposed was 35 months. *See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

In the 2025 case, the Parties agreed to a total offense level of 23, 25, or 27, depending on whether sophisticated means and/or role enhancements were given. *See 2025 Case DE 24 at ¶12.*

- Applying the alternative total offense level of 23 identified in the plea agreement with a criminal history I, of the 234 defendants whose primary guideline was §2B1.1, the average length of imprisonment imposed was 35 months and the median length of imprisonment imposed was 36 months.



- For the alternative total offense level of 25 identified in the plea agreement with a criminal history I, of the 166 defendants whose primary guideline was §2B1.1, the average length of imprisonment imposed was 39 months and the median length of imprisonment imposed was 41 months.

- For the alternative total offense level 27, and a Criminal History Category of I, of the 163 defendants whose primary guideline was §2B1.1, the average length of imprisonment imposed was 48 months and the median length of imprisonment imposed was 48 months.

*See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

### FACTOR 7: RESTITUTION

There is no restitution in Case No. 19-cr-20674-DPG. *See PSR at ¶ 221*. Restitution in Case No. 25-cr-20154-DPG, per the plea agreement is $21,540,489.00.  *See PSR at ¶222.*

**B. REQUEST FOR DOWNWARD DEPARTURE/VARIANCE PURSUANT TO *18 U.S.C. 3553, U.S.S.G.§ 2B1.1 APPLICATION NOTE 21(C), UNITED STATES v. WILLIAMS, 435 F.3d 1350 (11th Cir. 2006)*, AND *U.S.S.G § 5K2.0***

Mr. Arencibia pursuant to 18 U.S.C. § 3553(a) and *United States v. William,* 435 F.3d 1350 (11th Cir. 2006), asks this court to consider a variance from the Advisory Guidelines range in the PSR. According to the offense level computations set forth in the PSR, 36, the advisory sentencing guidelines is 188 to 235 months incarceration. This guideline range is far in excess of any sentence that is "sufficient but not greater than necessary" for punishment under 18 U.S.C. §3553(a).

Mr. Arencibia respectfully requests that this Court grant a downward departure and/or variance from the advisory guidelines range recommended herein, as any sentence within the advisory guidelines range would fail to account for the application of the § 3553 factors as to Mr. Arencibia; specifically, the effect aggregation of the loss amount, in combination with the PSR's



erroneously applied enhancements, overstate Mr. Arencibia's criminal conduct herein; and Mr. Arencibia's pretrial detention status.

A sentence in the range of 188 to 235 months' imprisonment is far in excess of any sentence that is "sufficient, but not greater than necessary."  In determining the particular sentence to be imposed, the Court shall consider" the factors in subsections (a) (1) – (7). *See U.S. v. Crawford*, 407 F.3d 1174, 1178 (11th Cir.2005) (noting "the district court remains obliged to 'consult' and 'take into account' the Guidelines in sentencing"). "After it has made this calculation, the district court may impose a more severe or more lenient sentence as long as the sentence is reasonable." *Id.* at 1179; *See also U.S.S.G. §2B1.1, App. Notes 21(C)*.

The § 3553 factors as applied to Mr. Arencibia were addressed individually and in detail above. The factors all weigh in favor of Mr. Arencibia's position herein that this Court should depart downward from the proposed guideline sentence herein and sentence him to a below-guidelines sentence that lines up with the Parties' agreement, 53 and 57 months respectively, assuming the Court overrules all or some of Mr. Arencibia's objections. A downward departure is especially warranted here for several compelling reasons.  First, the only coconspirator sentenced in the 2025 case was sentenced to 33 months. Second, Mr. Arencibia and Mr. Rivera are the only coconspirators with a loss amount exceeding $21 million—an amount the Government required them to stipulate to-- while the other coconspirators were assessed a loss amount of only $7.2 million. Third, the PSR applies various enhancements without adequate factual support.  Finally, Mr. Arencibia's loss amount in the 2025 case, particularly when aggregated for purposes of grouping, significantly overstates Mr. Arencibia's criminal conduct.

QUINTERO BROCHE & FONSECA-NADER P.A.

75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446- 0303 • Fax: (305) 446- 4503

1. *__The Loss Amount Overstates the Seriousness of Mr. Arencibia's Conduct__*

Application Note 21 (C) in U.S.S.G. § 2B1.1 states in pertinent part: "There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted."  Courts interpreting this provision have applied it to situations where the offense level under the Guidelines has overstated the defendant's conduct in the case. This application has usually resulted in cases where the courts have found that the defendant's pecuniary gain has been minimal or not at all in relation to the overall loss amount. *See United States v. Kushner*, 305 F.3d 194 (3d Cir. 2002) (the amount of intended loss can overstate the seriousness of the offense); *United States v. Walters*, 87 F.3d 663 (5th Cir. 1996); (U.S.S.G. § 5K2.0 provides a statutory basis for the desired departure); *United States v. Forchette*, 220 F. Supp. 2d 914 (E.D. Wis. 2002); *United States v. Costello*, 16 F. Supp. 2d 36 (D. Mass. 1998); *United States v. Connors*, 2007 WL 2955612 (E.D. 2007); *United States v. Algahaim*, 842 F.3d 796 (2d Cir. 2016) (where the Commission has assigned a rather low base offense level and increased it significantly by a loss enhancement, that combination of circumstances entitles a sentencing judge to consider a non-Guidelines sentence).

Here, the Government and the undersigned counsel agreed to a total offense level between 23 and 27, resulting in no greater than 70-87 months, if both sophisticated means and role enhancements applied.  *See Plea Agreements, 2019 Case DE 1117 at ¶7 and 2025 Case DE 24 at ¶12.*  In calculating Mr. Arencibia's sentence, probation grouped the cases and assessed numerous enhancements, including four (4) levels under USSG §2B1.1(b)(8)(B), two (2) levels for sophisticated means, and two (2) levels for role enhancement and no credit for Mr. Arencibia's criminal history, i.e., he qualifies for a zero-point offender.  Additionally, the Court should also consider that the coconspirators were only assessed a loss amount of $7.2 million while Mr.

QUINTERO BROCHE & FONSECA-NADER P.A.

75 Valencia Avenue • Suite 909 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

Arencibia was assessed $21,540,489.  When aggregating the loss amounts against Mr. Arencibia, there is a two-point difference if Mr. Arencibia's aggregate amount had been $14.5 million instead of $28,840,489.00.

Accordingly, the PSR's total offense level of 36, which results in a guideline range of 188 to 235 months is excessive.

As set out above, Mr. Arencibia was not an agent of or employed by any company or organization. Moreover, the offense here did not involve sophisticated means to justify a two-level increase pursuant to §2B1.1(b)(10)(C) nor should Mr. Arencibia be assessed an aggravating role. Accordingly, even if the Court finds that that two cases must be grouped under section 3D1.1, removing probations' erroneous inclusion of sophisticated means, role enhancement, and its additional four (4) level enhancement under section 2B1.1(b)(8)(B), Mr. Arencibia would be at a total offense level of 28, and taking the 2-point zero point offender decrease, Mr. Arencibia would be at a total offense level of 26, from which the Court could depart downward to the range agreed to by the Parties.

**2. _Extended Presencence Detention and Credit Pursuant to §5G1.3_**

Mr. Arencibia asks the Court to also consider that he has been continuously detained since January 26, 2024, a period of approximately 21 months. Throughout this extended pre-trial detention, Mr. Arencibia has been held at FDC Miami.  U.S.S.G. § 5G1.3(b) provides that:

> [I]f . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>
> > (1) the court _shall_ adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and



(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

The Supreme Court has explained the purpose of § 5G1.3 as "attempt[ing] to achieve some coordination of sentences imposed [where separate prosecutions occur based in part on the same relevant conduct] with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offense been imposed at the same time." *Witte v. United States*, 515 U.S. 389, 404, (1995).   Pursuant to § 5G1.3(b)(1), before imposing the sentence, the district court *shall* adjust the sentence for any period of imprisonment already served on the undischarged term if the court determines the Bureau of Prisons will not credit the time already served to the federal sentence. *U.S. v. Charniak*, 607 Fed. Appx. 936 (11th Cir. 2015).

This Court should credit Mr. Arencibia's 21-month presentence incarceration to any sentence in Case No. 25-cr-20154-DPG pursuant to USSG §5G1.3.  The presentence incarceration credit set out in 5G1.3 is mandatory if the requirements are met, i.e.,  the district court **shall** adjust the sentence for any period of imprisonment already served on the undischarged term *if the court determines the Bureau of Prisons will not credit the time already served to the federal sentence*. *U.S. v. Charniak*, 607 Fed. Appx. 936 (11th Cir. 2015).

The Federal Bureau of Prisons will not credit a defendant's presentence incarceration time to two sentences on two separate cases.  *See attached as **Exhibit B**, Declaration of J. McEvoy, Bureau of Prisons in United States v. Hildo Valdes, Case No. 22-cv-21871, ¶9.*  In *United States v. Hildo Valdes,* Case No. 19-cr-20819 and Case No. 13-cr-20350,  BOP refused to give the defendant credit for his presentence incarceration despite the Courts' Judgments indicating that the sentences were to run concurrently.  In *Valdes,* defendant was charged in Case No. 13-cr-20350

35

and was released from custody after posting bond.  His bond was subsequently revoked for failure to appear.  He was then charged in Case No. 19-cr-20819 for failure to appear and contempt of court and remained incarcerated from the time of his arrest on May 4, 2020.

Mr. Valdes was sentenced in Case No. 19-cr-20819 to 12 months, consisting of two consecutive six months sentences pursuant to the enhanced penalty provided by 18 U.S.C. 3147, "to run concurrent with the term of imprisonment anticipated to be imposed in Case No. 13-cr-20350-Moore."  Mr. Valdes was subsequently sentenced in Case No. 13-cr-20350 to 33 months with "the term of imprisonment imposed in docket number 19-20819-cr-William to run concurrently to the term imposed in this case."

When Mr. Valdes arrived at his designated facility and received his computation report, the report reflected that BOP began computing his sentence from the date he was sentenced in Case No. 13-cr-20350 and refused to give him credit for the time he spent in custody since his last arrest (approximately 409 days).  BOP took the position that it would not be giving Mr. Valdes credit for the time served in the 2019 case because by the time he was sentenced in the 2013 case, he had already served his sentence in the 2019 case and therefore there was no sentence to run concurrent to.  In short, BOP refused to give Mr. Valdes the 12 months of presentence incarceration time on the 2013 Case.  *See **Exhibit B***.

The undersigned then filed a 2255 petition before Judge Moore, who granted the petition and entered an Amended Judgment reducing Mr. Valdes' original sentence by 12 months pursuant to USSG §5G1.3(b).  *See **Exhibit C***.  To prevent the same issue that arose in *Valdes* from recurring here, the Court should follow §5G1.3(b)'s directive and a variance/downward departure providing 21 months of presentence incarceration credit against any sentence imposed in the 2025 Case.

36



As a further reason to give the credit requested, the 2025 Case should have been filed concurrently with the 2019 case in December 2023, and certainly by the time Mr. Arencibia was arrested on January 26, 2024. By December of 2023, the Government possessed all necessary evidence to formally charge Mr. Arencibia but, for whatever reason, chose not to do so. The record demonstrates that key witness interviews were completed well before Mr. Arencibia's arrest:

- *Juan Silva*
  - January 11, 2022, Report of Interview, Office of Inspector General

- *Confidential Human Source* (upon information and belief, the confidential human source in this report is Stephen Costa)
  - August 30, 2023, FBI 302 Report
  - December 11, 2023, FBI 302 Report

- *Lazaro Hernandez*
  - April 21, 2023, Report of Interview, Office of Inspector General
  - August 6, 2023, Memorandum of Interview, Office of Inspector General
  - August 31, 2023, Report of Interview, Office of Inspector General
  - February 2, 2024, Report of Interview, Office of Inspector General

- *Joe Jimenez*
  - March 24, 2024, Report of Interview, Office of Inspector General

- *David Paschl*
  - March 28, 2024, Report of Interview, Office of Inspector General

- *Eclipse Investigation*
  - April 8, 2024, Department of Homeland Security Report.

Notably, coconspirators in this case were indicted as early as January 9, 2024. Mr. Valdespino was indicted on January 9, 2024, Alex Oria was indicted in March 2024, and Diosdan Alvarado was indicted on June 18, 2024.



Mr. Arencibia's 21-month pretrial detention period significantly exceeds typical pre-trial custody periods and constitutes punishment that warrants meaningful credit against any sentence imposed. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (recognizing that lengthy pretrial detention may warrant consideration beyond mechanical credit). The conditions at FDC Miami during Mr. Arencibia's detention have been particularly severe, including: a tuberculosis outbreak in early May 2025; a a lockdown following a revolt by detainees in April 2025 caused primarily by immigrants picked up by ICE; and, more recently, placement of Cuban prisoners in the Special Housing Unit (SHU) following a dispute with another group of prisoners. Moreover, because he has been incarcerated, Mr. Arencibia has had limited access to legal materials and counsel and has not been able to take advantage of programming or educational opportunities. These conditions are materially more restrictive than those typically encountered in the Bureau of Prisons facilities where Mr. Arencibia would likely serve any sentence imposed. *See United States v. Morales*, 52 F.3d 7, 10 (1st Cir. 1995) (noting that harsh pre-trial conditions may justify enhanced credit consideration).

Codefendants and coconspirators released pretrial have enjoyed substantial advantages Mr. Arencibia has been denied, including the ability to: maintain family relationships and employment; ensure their affairs are in order before serving their time; participate in community service or treatment programs; demonstrate rehabilitation and acceptance of responsibility; and avoid the collateral consequences of extended incarceration. Mr. Arencibia has been denied these opportunities solely due to his detention status, not due to any difference in culpability or criminal conduct.

QUINTERO BROCHE & FONSECA-NADER P.A.

75 Valencia Avenue • Suite 900 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

Courts have recognized that conditions of detention and confinement may justify downward departures. *See United States v. Carty*, 264 F. 3d 191, 196 (2d Cir. 2001) (holding that conditions of incarceration "may in appropriate cases be a permissible basis for downward departures); *United States v. Hernandez-Santiago*, 92 F. 3d 97 (2d Cir. 1996); *United States v. Sutton*, 973 F. Supp. 488, 493 (D.N.J. 1997), aff'd 156 F. 3d 1226 (3d Cir. 1998). The extended presence detention, combined with the harsh conditions of confinement, has already resulted in substantial punishment. A sentence that fails to adequately account for this detention would result in excessive punishment relative to Mr. Arencibia's culpability and the seriousness of the offense.

Accordingly, Mr. Arencibia respectfully requests this Court grant full statutory credit under § 5G1.3(b) for the 21 months of presence detention; consider the harsh conditions and extended duration of presence detention as grounds for a downward departure or variance under 18 U.S.C. § 3553(a); and structure any sentence of imprisonment to provide Mr. Arencibia credit under 5G1.3.

**3. *National and Southern District Statistics Regarding Variances in Fraud Cases***

The defense also requests that the Court take Judicial Notice of the United States Sentencing Commission's Statistical Information Packet for Fiscal Year 2024, Southern District of Florida, Table 10. *Attached hereto as **Exhibit D**.*[12] Pursuant to the sentencing data from the Sentencing Commission for the Southern District of Florida for the fiscal year 2024, district court

---

12 https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2024/fls24.pdf



judges granted variances in 39.1% of fraud cases[13] and 35.2% of money laundering cases. Nationally, in 2024, district court judges granted variances in 38.8% of fraud cases and 43.4% of money laundering cases. The percentage of upward departures in the entire Southern District of Florida in fraud and money laundering cases in 2024 was zero. Nationally the percentage of upward departures in fraud cases in 2024 was 0.3% and in money laundering cases 0.2%.  *(See, Table 10 attached as **Exhibit D**).* Should the Court overrule Mr. Arencibia's objections as set out herein, it would, in effect, be granting an upward departure sentence by default.

Given Mr. Arencibia's acceptance of responsibility and the established precedent of granting downward variances in comparable cases, 53 months and 57 months respectively is a sufficient but not greater than necessary sentence for Mr. Arencibia, with a 21-month incarceration credit in the 2025 Case.

**4. _Additional Time in ICE Custody_**

As an additional basis for a variance, Mr. Arencibia asks that the Court consider the additional incarceration time Mr. Arencibia will spend in ICE custody awaiting deportation. After completion of his sentence, the Defendant will be transferred to INS custody to be processed for removal from the United States.

Mr. Arencibia asserts that the above reasons taken individually or collectively provide sufficient reasons for a downward variance.

---

13 This case is a prescription drug diversion case which may more appropriately fall either in the drug trafficking or "other miscellaneous offenses" categories.  Southern District Court judges granted variances in 56.2% of drug trafficking cases and 43.9% of "other miscellaneous offenses" cases. Nationally, in 2024, district court judges granted variances in 41.5% of drug trafficking cases and 35.4% of "other miscellaneous offenses" cases.



## V. <u>CONCLUSION</u>

**WHEREFORE**, for the reasons detailed herein, the Defendant, BORIS ARENCIBIA, respectfully requests that this Court adopt the objections to the Presentence Investigation Report, calculate separate sentences for the two cases Case No. 19-cr-20674, level 23, criminal history category I (46-57 months) and Case No. 25-cr-20154, level 25, criminal history category I (57-71months) with the sentences to run concurrent, grant a variance as set forth in the arguments above, grant Mr. Arencibia credit for the 21 months already served and sentence Mr. Arencibia to 36 months in the 2025 Case and 53 months in the 2019 Case, and grant such other relief the Court deems appropriate under the circumstances.

Mr. Arencibia and Counsel thank this Court for considering his objections to the Presentence Investigation Report (PSR) and Sentencing Memorandum. Counsel will have further remarks at the time of sentencing.

Respectfully submitted,

**QUINTERO BROCHE &**
**FONSECA-NADER, P.A.**
*Attorneys for Boris Arencibia*
75 Valencia Avenue, Suite 800
Coral Gables, Florida 33134
Tel: (305)446-0303
Fax: (305)446-4503

By: */s/ Frank Quintero, Jr.*
FRANK QUINTERO, Jr.
Florida Bar No. 399167



**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on September 30, 2025, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

By: <u>*/s/ Frank Quintero, Jr.*</u>
FRANK QUINTERO, Jr.
FLORIDA BAR NO.: 399167

QUINTERO BROCHE & FONSECA-NADER P.A.

75 Valencia Avenue • Suite 909 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

# EXHIBIT A

UNITED STATES v. ARENCIBIA,
19-cr-20674-DPG/25-cr-20154-DPG

CODEFENDANTS'/COCONSPIRATORS' SENTENCES

| DEFENDANT | Counts Plead to | Calculated Loss Amount | Amended Sentence | Original Sentence |
|---|---|---|---|---|
| **19-cr-20674-DPG** | | | | |
| Joshua Ryan Joles | 18:670A.F Conspiracy to Traffic in Medical Products with False Documentation<br><br>18:1956-3300.F Conspiracy to Commit Money Laundering | More than $78 million | Time served (51 months) /Three years supervised release.<br>**Second Amended Judgment Entered 6/24/2025:** | 76 Months (60 Months Count Two/ 76 Months Count Three to run concurrent.<br><br>Supervised Release Three (3) years to run concurrent with each other.<br><br>*Reduced to* 51 Months as to counts 2s and 3s of the to run concurrent with each other; three (3) years supervised release to run concurrent.<br><br>Forfeiture $2,750,000.00 |
| Mohammad Mehdi Salemi | 18:670A.F Conspiracy to Traffic in Medical Products with False Documentation<br><br>18:1956-3300.F Conspiracy to Commit Money Laundering | $78 million | 53 months as to counts 2 and 3 to run concurrent.<br>Supervised Release: 3 years, to each counts 2 and 3 to run concurrent with each other.<br><br>**Third Amended Judgment Entered 9/18/2025:** | 103 months as to counts 2 and 3 to run concurrent with each other. SUPERVISED RELEASE: Three (3) years, to run concurrent.<br><br>*Reduced to* 70 Months to Run Concurrent with Count 3. Supervised Release: 3 years to run concurrent.<br>*Reduced to* 68 months as to counts 2 and 3 to run concurrent Supervised Release: 3 years, to each counts 2 and 3 to run concurrent |

UNITED STATES v. ARENCIBIA,
19-cr-20674-DPG/25-cr-20154-DPG

CODEFENDANTS'/COCONSPIRATORS' SENTENCES

| DEFENDANT | Counts Plead to | Calculated Loss Amount | Amended Sentence | Original Sentence |
|---|---|---|---|---|
| Leonides Herrera | 18:1956-3300.F Conspiracy to Commit Money Laundering | $3.5 to $9.5 million | **Judgment Entered 10/21/2020:** 46 months; Supervised Release 36 months | same |
| Frank Alvarez | 18:371.F Conspiracy to Deliver Misbranded and Adulterated Drugs<br><br>18:670A.F Conspiracy to Traffic in Medical Products with False Document | More than $9.5 but less than $25 million | **Amended Judgment Entered 12/14/2023:** 24 months as to counts 1 and 2 to run concurrent with each other.<br><br>Supervised Release: 3 years to run concurrent. | 60 months; Supervised Release 36 months concurrent with each other |
| Kadir Diaz | 18:670A.F Conspiracy to Traffic in Medical Products with False Documentation<br><br>18:1956-3300.F Conspiracy to Commit Money Laundering | $21 million | **Second Amended Judgment Entered 7/21/2025:** Time served/Three (3) years supervised release | 87 months. 60 months (Count 2) to run concurrent to 87 months Count 3;<br><br>Supervised Release 36 months concurrent<br><br>*Reduced to* 30 months as to counts 2 and 3 to run concurrent.<br><br>Supervised Release: Three (3) years to run concurrent. |
| Jorge Isaac Paiz | 18:670A.F Conspiracy to Traffic in Medical Products with False Documentation | More than $9.5 but less than $25 million | **Amended Judgment Entered 12/13/2023:** 42 months as to counts 2 and 3 to run concurrent with each other. | 87 months (60 mos (Count 2) to run concurrent to Count 3 (87 month);<br><br>Supervised Release 36 months concurrent with each other |

UNITED STATES v. ARENCIBIA,
19-cr-20674-DPG/25-cr-20154-DPG

CODEFENDANTS'/COCONSPIRATORS'  SENTENCES

| DEFENDANT | Counts Plead to | Calculated Loss Amount | Amended Sentence | Original Sentence |
|---|---|---|---|---|
| | 18:1956-3300.F Conspiracy to Commit Money Laundering | | SUPERVISED RELEASE: Three (3) years, to run concurrent with each other. | |
| Carlos Robin Gonzalez | 18:670A.F Conspiracy to Traffic in Medical Products with False Documentation | More than $9.5 but less than $25 million | **Amended Judgment Entered 12/13/2023:** 12 months and 1 day.<br><br>SUPERVISED RELEASE: 3 years. | 36 months.<br><br>SUPERVISED RELEASE: 3 years. |
| Adrian Cambara Ortiz | 18:1956-3300.F Conspiracy to Commit Money Laundering | $3.5 to $9.5 million | **Amended Judgment Entered 1/31/2023:** 34 months as to count 3;<br>Supervised Release 36 months | 46 months;<br>Supervised Release 36 months |
| Stephen Costa | 18:670 Conspiracy to traffic in medical products with false documents<br>18:1956(h) Conspiracy to Commit Money Laundering | $77 million<br><br>*See* Sentencing Tr. at p. 4:12 | 168 Months Counts 2 and 3 to run concurrent<br><br>Supervised Release: Three (3) Years | same |
| Leah Solomon | 18:1956-4700.F Conspiracy To Commit Money Laundering (MAIL FRAUD/WIRE FRAUD) | More than $9.5 million | **Judgment Entered 2/17/2022:** 30 months.<br><br>SUPERVISED RELEASE: 2 years. | same |
| David Ramirez Garcia, Sr. | 18:670a.F  Conspiracy To Traffic In Medical Products With False Documentation | $78 million | **Judgment Entered 10/27/2021:** 30 months.<br><br>SUPERVISED RELEASE: 1 year. | same |

3

UNITED STATES v. ARENCIBIA,
19-cr-20674-DPG/25-cr-20154-DPG

CODEFENDANTS'/COCONSPIRATORS' SENTENCES

| DEFENDANT | Counts Plead to | Calculated Loss Amount | Amended Sentence | Original Sentence |
|---|---|---|---|---|
| Ruben Reynaldo Rodriguez Diaz | 18:1956-4700.F Conspiracy To Commit Money Laundering (MAIL FRAUD/WIRE FRAUD) | $550,000 | **Judgment entered 2/17/2022:** PROBATION: 3 years. | Same |
| Rafael Angel Romero | 18:1956-3300.F Conspiracy To Commit Money Laundering - Interstate Commerce | $20 million | **Judgment Entered 03/02/2023:** 60 Months as to Count 3.<br><br>SUPERVISED RELEASE: 3 Years. | Same |
| Lazaro Roberto Hernandez | 18:670A.F  Conspiracy To Traffic In Medical Products With False Documentation<br><br>18:1956-3300.F Conspiracy To Commit Money Laundering - Interstate Commerce | $78 million | **Judgment Entered 6/28/2023:** 168 months as to counts 2s and 3s to run concurrent with each other and to run concurrent with the sentence imposed in Case No. 22-60129-CR-SINGHAL.<br><br>SUPERVISED RELEASE: Three (3) years to run concurrent with each other. | Same |
| Eladio Vega | 18:670A.F  Conspiracy to traffic in medical products with false documentation | $33 million | **Judgment Entered 7/25/2023:** 87 months as to Count 2s. SUPERVISED RELEASE: 3 years | same |
| Gustavo Linares | 18:670 Conspiracy  to traffic in medical products with false documentation | $7.3 million | 36 months as to Count 2 Supervised Release: Three (3) years | same |

UNITED STATES v. ARENCIBIA,
19-cr-20674-DPG/25-cr-20154-DPG

CODEFENDANTS'/COCONSPIRATORS' SENTENCES

| DEFENDANT | Counts Plead to | Calculated Loss Amount | Amended Sentence | Original Sentence |
|---|---|---|---|---|
| **25-cr-20154** | | | | |
| Orel Valdespino | MONEY LAUNDERING | $7.2 million | 33 months<br><br>Supervised Release: Three (3) years | No Role Adjustment Assessed by Court<br><br>PLEA: Total Offense Level (20)  33-41 mos.<br>LOSS AMOUNT:<br>$3.5 million but not more than 9.5 million<br>Forfeiture $200,000 |
| Alex Oria | 18:371  Conspiracy to introduce into interstate commerce adulterated and misbranded drugs and defraud the US | $7.2 million | | PLEA Total Offense Level (23) 46-57 mos.<br>LOSS AMOUNT:<br>$3.5 million but not more than 9.5 million<br>Forfeiture $7,200,000 |
| Diosdan Alvarado | 18:371  Conspiracy to introduce into interstate commerce adulterated and misbranded drugs and defraud the US | More than $3.5 million but not more than $9.5 million | | PLEA: Total Offense Level (21) 37-46 mos.<br>LOSS AMOUNT:<br>$3.5 million but not more than $9.5 million<br>Forfeiture $21,540,489 |

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:13-CR-20350-KMM(3)

UNITED STATES OF AMERICA,
             Plaintiff,

      v.

HIDLO VALDES,
             Defendant.

_____

## <u>DECLARATION OF J. MCEVOY</u>

1.      I am currently employed by the United States Department of Justice, Federal Bureau of Prisons (BOP), as a Management Analyst at the Designation & Sentence Computation Center located in Grand Prairie, Texas. I have worked for the BOP since January 2008. I have worked in the area of inmate Sentence Computations since January 2020.

2.      I reviewed the habeas petition filed by Petitioner, inmate Valdes, Hildo, Federal Register Number 01662-104, and I reviewed the Sentence Computation raised in the petition. The computation has been computed in accordance with Federal statute and BOP policy.

3.      On June 27, 2013, Petitioner was arrested by Law Enforcement for Theft of Off-Highway Equipment in Southern District of Florida and charged in Docket Number 13-CR-20350-KMM(3). On July 16, 2013, he was released on bond with a scheduled arraignment date of July 26, 2013, that he was required to be present. The Petitioner failed to appear and a warrant was subsequently issued. <u>See</u>, Attachment 1, Judgment and Conviction Order, 13-CR-20350-KMM(3).

4.      On May 4, 2020, Petitioner was arrested by Law Enforcement for the outstanding warrants and for Docket Number, 13-CR-20350-KMM(3).

5.      On May 25, 2021, Petitioner was sentenced to 12-months imprisonment in the United States District Court for the Southern District of Florida in Case Number 19-cr-20819-Williams. <u>See</u>, Attachment 2, Judgment and Conviction Order, 19-CR-20819-KMW.

6.      On June 17, 2021, Petitioner was sentenced by the United States District Court for the Southern District of Florida to a 33-month term of imprisonment for Attempt to Export Stolen Off-Highway Mobile Equipment, Case Number 1:13-CR-20350-KMM(3). The Court ordered the Federal sentence to run concurrent with Case Number 19-cr-20819-Williams. <u>See</u>, Attachment 1.

7.      I have reviewed SENTRY to determine if this inmate has filed any Administrative Remedies on his Sentence Computation. The Petitioner has not filed Administrative Remedies at the Institution, Region, or Central Office level within the Bureau of Prisons. <u>See</u>, Attachment 3,

1

Administrative Remedy History.

8. I have reviewed the Petitioner's allegations in this habeas petition. The Petitioner requests the Bureau of Prisons to produce the 33-month sentence imposed.

9. In response to these allegations, the Bureau of Prisons has reviewed the circumstances and documentation regarding Petitioner's allegation. The Bureau of Prisons has delegated authority from the Attorney General of the United States to calculate Federal sentences (28 C.F.R. § 0.96 (2010). The Bureau of Prisons uses Title 18, U.S.C. § 3585(b) to determine prior custody credit on a Federal sentence. Title 18, U.S.C. § 3585(b) states in part, **"A defendant shall be given credit toward the service of a term of imprisonment for any time he/she has spent in official detention prior to the date the sentence commences, that has not been credited against another sentence."** This statute precludes the award of credit if it has been credited towards another sentence. <u>See</u>, Attachment 4, Title 18, U.S.C. § 3585(b) Excerpt.

10. The Petitioner was in service of Federal sentence, Case Number 19-cr-20819-Williams, and received credit toward the sentence starting from June 27, 2013, through July 16, 2013, the day he posted bond. Additionally, the Petitioner received credit from May 3, 2020, through July 24, 2021, the day before the imposition of his sentence. The release date for this case was April 12, 2021. <u>See</u>, Attachment 5, Sentence Computation.

11. At the time the second Federal sentence, Case Number 1:13-CR-20350-KMM(3) was imposed, Petitioner completed his sentence for Case Number 19-cr-20819-Williams. He remained in custody pending sentencing for Case Number 1:13-CR-20350-KMM(3). Since the Federal sentence was ordered as concurrent, it was calculated as such. <u>Id.</u>

12. Under the provisions of Title 18, U.S.C. § 3584(a), "Multiple terms of imprisonment imposed at different times run consecutively unless the Court orders that the terms are to run concurrently. In this case, the Federal sentencing Court ordered the Federal sentence to run concurrent to Case Number 19-cr-20819-Williams. Therefore, the Bureau of Prisons computed Petitioner's sentence to commence on June 17, 2021, the date it was imposed. The Petitioner received credit from April 13, 2021, the day after his release from Case Number 19-cr-20819-Williams, to June 16, 2021, the day prior to imposition for Case Number 19-cr-20819-Williams. The release date for this case is August 16, 2023. <u>See</u>, Attachment 6, Title 18, U.S.C. § 3584(a) Excerpt.

13. The Petitioner's sentence has been computed in accordance with the above cited Federal statutes and Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984).

 Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _9_ day of February, 2022

_J. McEvoy_____

J. McEvoy
Management Analyst
Designation & Sentence Computation Center

2

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| | § |
| v. | § |
| | § Case Number: **1:13-CR-20350-KMM(3)** |
| **HILDO VALDES** | § USM Number: **01662-104** |
| | § |
| | § Counsel for Defendant: **Frank Quintero, Jr.** |
| Date of Original Judgment: 6/17/2021 | § Counsel for United States: **Jonathan Bailyn** |
| Reason for Amendment:  Direct Motion to District Court Pursuant to 28 U.S.C. § 2255 | |

## THE DEFENDANT:

| | |
|---|---|
| ☒ | pleaded guilty to Count Three of the Indictment. |
| ☐ | pleaded guilty to count(s) before a U.S. Magistrate Judge, which was accepted by the court. |
| ☐ | pleaded nolo contendere to count(s) which was accepted by the court |
| ☐ | was found guilty on count(s) after a plea of not guilty |

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18 U.S.C. § 553(a)(1) - Attempt to Export Stolen Off-Highway Mobile Equipment | 2/24/2011 | 3 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐    The defendant has been found not guilty on count(s)

☒    Counts 1, 4, and 5 are dismissed on the motion of the United States

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

_K. M. Moore_
Signature of Judge

**K. MICHAEL MOORE**
**CHIEF UNITED STATES DISTRICT JUDGE**
Name and Title of Judge

**September 1, 2022**
Date

DEFENDANT:       HILDO VALDES
CASE NUMBER:   1:13-CR-20350-KMM(3)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**21 months as to Count Three. The term of imprisonment imposed in case number 1:19-cr-20819-KMW-1 is to run concurrently to the term imposed in this case.**

☒   The court makes the following recommendations to the Bureau of Prisons:
     Designation to a facility in the Houston area to be near family.

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

     ☐  at                   ☐  a.m.    ☐  p.m.  on

     ☐  as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐  before 2 p.m. on
     ☐  as notified by the United States Marshal.
     ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to

at _____, with a certified copy of this judgment.

UNITED STATES MARSHAL

By
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case                    Judgment -- Page 3 of 7

DEFENDANT:          HILDO VALDES
CASE NUMBER:        1:13-CR-20350-KMM(3)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of: **Three (3) years.**

# MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.

2.  You must not unlawfully possess a controlled substance.

3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. (*check if applicable*)

4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. (*check if applicable)*

5.  ☒ You must cooperate in the collection of DNA as directed by the probation officer. (*check if applicable*)

6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. (*check if applicable*)

7.  ☐ You must participate in an approved program for domestic violence. (*check if applicable*)

You must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

DEFENDANT:        HILDO VALDES
CASE NUMBER:      1:13-CR-20350-KMM(3)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

# U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. I understand additional information regarding these conditions is available at www.flsp.uscourts.gov.

Defendant's Signature  _____        Date  _____

AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case                                    Judgment -- Page 5 of 7

DEFENDANT:           HILDO VALDES
CASE NUMBER:         1:13-CR-20350-KMM(3)

## SPECIAL CONDITIONS OF SUPERVISION

**Financial Disclosure Requirement:** The defendant shall provide complete access to financial information, including disclosure of all business and personal finances, to the U.S. Probation Officer.

**No New Debt Restriction:** The defendant shall not apply for, solicit or incur any further debt, included but not limited to loans, lines of credit or credit card charges, either as a principal or cosigner, as an individual or through any corporate entity, without first obtaining permission from the United States Probation Officer.

**Permissible Search:** The defendant shall submit to a search of his/her person or property conducted in a reasonable manner and at a reasonable time by the U.S. Probation Officer.

**Self-Employment Restriction:** The defendant shall obtain prior written approval from the Court before entering into any self-employment.

**Surrendering to Immigration for Removal After Imprisonment:** At the completion of the defendant's term of imprisonment, the defendant shall be surrendered to the custody of the U.S. Immigration and Customs Enforcement for removal proceedings consistent with the Immigration and Nationality Act. If removed, the defendant shall not reenter the United States without the prior written permission of the Secretary of Homeland Security. The term of supervised release shall be non-reporting while the defendant is residing outside the United States. If the defendant reenters the United States within the term of supervised release, the defendant is to report to the nearest U.S. Probation Office within 72 hours of the defendant's arrival.

**Unpaid Restitution, Fines, or Special Assessments:** If the defendant has any unpaid amount of restitution, fines, or special assessments, the defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay.

AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case                                                    Judgment -- Page 6 of 7

DEFENDANT:           HILDO VALDES
CASE NUMBER:         1:13-CR-20350-KMM(3)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments page.

| | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| **TOTALS** | $100.00 | $.00 | $.00 | | |

☐ The determination of restitution is deferred until          An *Amended Judgment in a Criminal Case (AO245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the schedule of payments page may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐ the interest requirement is waived for the          ☐ fine          ☐ restitution

   ☐ the interest requirement for the          ☐ fine          ☐ restitution is modified as follows:

Restitution with Imprisonment - It is further ordered that the defendant shall pay restitution in the amount of **$.00**. During the period of incarceration, payment shall be made as follows: (1) if the defendant earns wages in a Federal Prison Industries (UNICOR) job, then the defendant must pay 50% of wages earned toward the financial obligations imposed by this Judgment in a Criminal Case; (2) if the defendant does not work in a UNICOR job, then the defendant must pay a minimum of $25.00 per quarter toward the financial obligations imposed in this order. Upon release of incarceration, the defendant shall pay restitution at the rate of 10% of monthly gross earnings, until such time as the court may alter that payment schedule in the interests of justice. The U.S. Bureau of Prisons, U.S. Probation Office and U.S. Attorney's Office shall monitor the payment of restitution and report to the court any material change in the defendant's ability to pay. These payments do not preclude the government from using other assets or income of the defendant to satisfy the restitution obligations.

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, 18 U.S.C. §2259.
** Justice for Victims of Trafficking Act of 2015, 18 U.S.C. §3014.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case                                      Judgment -- Page 7 of 7

DEFENDANT:        HILDO VALDES
CASE NUMBER:      1:13-CR-20350-KMM(3)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A      ☒     Lump sum payment of $100.00 due immediately, balance due

**It is ordered that the Defendant shall pay to the United States a special assessment of $100.00 for Count 3, which shall be due immediately. Said special assessment shall be paid to the Clerk, U.S. District Court. Payment is to be addressed to:**

       **U.S. CLERK'S OFFICE**
       **ATTN: FINANCIAL SECTION**
       **400 NORTH MIAMI AVENUE, ROOM 8N09**
       **MIAMI, FLORIDA 33128-7716**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐     Joint and Several
      See above for Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and
      Several Amount, and corresponding payee, if appropriate.

☒     The defendant shall forfeit the defendant's interest in the following property to the United States:
      **FORFEITURE of the defendant's right, title and interest in certain property is hereby ordered consistent with the plea**
      **agreement. The United States shall submit a proposed Order of Forfeiture within three days of this proceeding.**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# EXHIBIT D

**Table 10**

**SENTENCE IMPOSED RELATIVE TO THE GUIDELINE RANGE
BY TYPE OF CRIME
Fiscal Year 2024**

**National**

| TYPE OF CRIME | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | VARIANCE | |
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total | 61,331 | 28,038 | 45.7 | 326 | 0.5 | 6,099 | 9.9 | 4,374 | 7.1 | 2,239 | 3.7 | 20,255 | 33.0 |
| Child Pornography | 1,375 | 520 | 37.8 | 3 | 0.2 | 25 | 1.8 | 1 | 0.1 | 44 | 3.2 | 782 | 56.9 |
| Drug Trafficking | 18,164 | 5,177 | 28.5 | 65 | 0.4 | 3,694 | 20.3 | 950 | 5.2 | 737 | 4.1 | 7,541 | 41.5 |
| Firearms | 8,123 | 4,124 | 50.8 | 61 | 0.8 | 447 | 5.5 | 8 | 0.1 | 238 | 2.9 | 3,245 | 39.9 |
| Fraud/Theft/Embezzlement | 5,279 | 2,277 | 43.1 | 17 | 0.3 | 738 | 14.0 | 7 | 0.1 | 191 | 3.6 | 2,049 | 38.8 |
| Immigration | 18,305 | 11,482 | 62.7 | 44 | 0.2 | 162 | 0.9 | 3,386 | 18.5 | 583 | 3.2 | 2,648 | 14.5 |
| Money Laundering | 1,289 | 308 | 23.9 | 3 | 0.2 | 325 | 25.2 | 16 | 1.2 | 77 | 6.0 | 560 | 43.4 |
| Robbery | 1,321 | 529 | 40.0 | 16 | 1.2 | 134 | 10.1 | 1 | 0.1 | 47 | 3.6 | 594 | 45.0 |
| Sex Abuse | 1,429 | 598 | 41.8 | 11 | 0.8 | 59 | 4.1 | 0 | 0.0 | 63 | 4.4 | 698 | 48.8 |
| Other Miscellaneous Offenses | 6,046 | 3,023 | 50.0 | 106 | 1.8 | 515 | 8.5 | 5 | 0.1 | 259 | 4.3 | 2,138 | 35.4 |

**Southern Florida**

| TYPE OF CRIME | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | VARIANCE | |
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | DOWNWARD | | | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total | 1,341 | 687 | 51.2 | 4 | 0.3 | 102 | 7.6 | 1 | 0.1 | 13 | 1.0 | 534 | 39.8 |
| Child Pornography | 45 | 15 | 33.3 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 30 | 66.7 |
| Drug Trafficking | 315 | 110 | 34.9 | 0 | 0.0 | 26 | 8.3 | 0 | 0.0 | 2 | 0.6 | 177 | 56.2 |
| Firearms | 125 | 76 | 60.8 | 2 | 1.6 | 1 | 0.8 | 0 | 0.0 | 0 | 0.0 | 46 | 36.8 |
| Fraud/Theft/Embezzlement | 284 | 126 | 44.4 | 0 | 0.0 | 45 | 15.8 | 1 | 0.4 | 1 | 0.4 | 111 | 39.1 |
| Immigration | 310 | 241 | 77.7 | 0 | 0.0 | 6 | 1.9 | 0 | 0.0 | 2 | 0.6 | 61 | 19.7 |
| Money Laundering | 54 | 24 | 44.4 | 0 | 0.0 | 8 | 14.8 | 0 | 0.0 | 3 | 5.6 | 19 | 35.2 |
| Robbery | 59 | 25 | 42.4 | 1 | 1.7 | 3 | 5.1 | 0 | 0.0 | 4 | 6.8 | 26 | 44.1 |
| Sex Abuse | 42 | 22 | 52.4 | 0 | 0.0 | 2 | 4.8 | 0 | 0.0 | 1 | 2.4 | 17 | 40.5 |
| Other Miscellaneous Offenses | 107 | 48 | 44.9 | 1 | 0.9 | 11 | 10.3 | 0 | 0.0 | 0 | 0.0 | 47 | 43.9 |

Of the 61,678 National cases, 347 were excluded because information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range.

Of the 1,377 cases from the Southern District of Florida, 36 cases were excluded because information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range.

SOURCE:  U.S. Sentencing Commission, 2024 Datafile, USSCFY24.

16