UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20674-Cr-GAYES

UNITED STATES OF AMERICA

v.

BORIS ARENCIBIA

           Defendant.

_____/

GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS
TO THE PSI REPORT AND SENTENCING MEMORANDUM

Defendant Boris Arencibia has filed a set of objections to the sentencing guidelines in his PSI Report, and combined it with a sentencing memorandum. This is the Government's Response to both sets of issues.

1.     PSI Report

As noted in previous pleadings, D.E. 1156 and D.E. 1157, the United States agrees with both defendants' positions on the applicable sentencing guidelines for 19-20674, and stands by its recommendation in the plea agreement (D.E. 1117).

The defendant objects to paragraph 230 of the PSI, which groups the amount of losses in the two cases by adding up the amount of money laundered in 19-20674 and the amount of fraud perpetrated in 25-20154. This results in a loss mount of more than $28 million. That figure raises the loss amount by two levels over what it would have been for Case No. 25-20154 alone, which had the higher guideline range.

While the defendant argues that the grouping of the two different statutory offenses of conviction was improper, the United States analyzes the situation differently. The grouping resulted only because the two cases were consolidated for pleas and sentencings. The defendant should not have his guideline range enhanced in this manner because of the procedural status of his pleas and sentencings. Had they been taken in separate proceedings, the defendant would not have been subject to the grouping.

However, he would have had criminal history points in the second sentencing based on his conviction in the first case, which would have raised his sentencing range. The court should thus note that his consolidation of pleas and sentencings has secured him a benefit by avoiding the criminal history. If the court accepts the agreed position of the parties as to the applicable guidelines, the avoidance of criminal history points is a factor that should be weighed in the court's consideration of the different final sentence recommendations of the United States and defendant Arencibia regarding at what point in the guideline range each party is advocating.

The United States takes issue with the defendant's contention, in the "Background" section of his pleading (D.E. 1150, pg. 4) that these two cases "are part of a single, continuous conspiracy." They are not. To the contrary, they were entirely separate and successive conspiracies – to commit the same types of offenses, certainly – but at different times periods and involving a different set of co-conspirators.

This fact is made obvious from the dates and the names in the two cases. The 2019 case encompassed a conspiracy that began in 2013 and was abruptly shut down in May 2019 when Federal agents executed search warrants at the business premises of two of the principle offenders. The first indictment was filed in October 2019, and arrests commenced days later.

The 2025 case charges a conspiracy that began in March, 2022. By March 2022, a Superseding Indictment had been filed in the 2019 case. Fourteen defendants had already been indicted and arrested, eight of whom had by then pled guilty, and six were pending trial.

Having not (yet) been brought to justice in that case, defendants Rivera and Arencibia apparently assumed they had evaded the law, and could continue to do so. So they formed a new front corporation (Eclipse), recruited a new set of conspirators, and marketed their drugs through entirely new and different outlets.

This conduct exemplifies these defendants' attitudes of impunity: Launching another conspiracy even while fourteen of their previous co-conspirators were, one after another, getting sentenced to years of imprisonment.

The defendant objects to paragraphs 44 and 49, claiming he did not Control Quality Supplement Distributors. These PSI paragraphs are correct. Two of the Government's cooperating defendants specifically identified that company as the one they were directed to send payments to for diverted drugs they purchased from Arencibia. They described it as his company, as it was also identified by unidentified co-conspirators with whom they dealt. The Government has bank records showing more than $1 million in wire transfers from Mohammad Salemi's bank account to Quality Supplement's bank account as payment for transactions Salemi entered into with Arencibia.

However, this dispute does not affect the guideline range and is not material to sentencing, so the court does not need to decide it.

2.    Response to Sentencing Memorandum

Most of the defendant's memorandum details reasons why a downward variance should be granted, if the Court decides to accept the guideline range calculated in the PSI Report.

Because the United States is recommending a sentence at the upper end of the same range that the defendant is seeking, there is no need for a response to his arguments. The United States would agree to a downward variance if the court adopts the guideline range in the PSI. A sentence in that range would be excessive, and a variance to a sentence within the range consistent with the parties' plea agreement would be appropriate.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:  /s/Frank H. Tamen
FRANK H. TAMEN
Assistant United States Attorney
Florida Bar No. 261289
99 Northeast 4th Street, Suite 700
Miami, Florida 33132-2111
Telephone: 305-961-9022
Email: Frank.Tamen@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 23, 2025, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: /s/ Frank H. Tamen
Frank H. Tamen
Assistant United States Attorney